Martha Devine Roderigas, Respondent, *v.* The East River Savings Institution, Appellant.

Where, upon presentation to a clerk in the office of a surrogate of a petition asking for the appointment of an administrator of the estate of M., who was, in fact, then living, the clerk filled up a blank for letters of administration signed and left with him by the surrogate, and attached thereto the surrogate's seal, the latter never having acted upon and having had no knowledge of the petition, *held*, that the judicial powers of the surrogate could not be delegated; that the letters were absolutely void, and were no protection to one who, upon presentation thereof, in good faith and relying upon them, paid to the person named as administrator a sum due M.

The petition alleged the death of M. upon the best of the knowledge, information and belief of the petitioner; there was no other proof of death. *Held*, that this was not due proof of the death such as would give the surrogate jurisdiction.

*Roderigas* v. *E. R. Savings Institution* (63 N. Y., 460), distinguished.

Also, *held*, that the person named in the letters could not be regarded as a *de facto* administrator.

Executors and administrators are not public officers, and the rule of protection to those dealing with the former is more restricted than when applied to the latter.

(Argued January 31, 1879; decided March 18, 1879.)

Appeal from order of the General Term of the Superior Court of the city of New York, reversing a judgment in favor of defendant, entered upon a decision of the court on trial without a jury. (Reported below, 11 J. & S. 217.)

This action was brought to recover the amount of deposits made by plaintiff in defendant's bank.

The facts appear sufficiently in the opinion.

*S. P. Nash*, for appellant. Evidence that the surrogate did not, in person, pass upon the application for letters, should have been excluded. (*Savacool* v. *Boughton*, 5 Wend., 170; *Stanton* v. *Schell*, 3 Sandf., 323; *Chegaray* v. *Jenkins*, 1 Seld., 376.) The letters were, as to the defendant, conclusive. (63 N. Y., 469, 471; 1 Ph. Ev., 380; 2 C. & H., note; Ph. Ev., 990, 1008, 1009; *Gwinne* v. *Poole*, 2 Lutw., 1568; *Savacool* v. *Boughton*, 5 Wend., 170; *Chegaray* v. *Jenkins*, 1 Seld., 378; *Bradley* v. *Ward*, 58 N. Y., 401.) When an officer is called upon to execute process valid on its face, or a third person to submit to the mandates or injunctions of persons clothed with apparent official authority, the process, official mandate, etc., protects the action if it is *bona fide*. (*Savacool* v. *Boughton*, 5 Wend., 170; *McGuinty* v. *Herrick*, id., 240; *Wilcox* v. *Smith*, id., 231; *Horton* v. *Hendershot*, 1 Hill, 118, 119; *Earl* v. *Camp*, 16 Wend., 562; *Griffith* v. *Frasier*, 8 Cranch, 9.) The doctrine of protection to persons dealing with officers *de facto* is analogous to that of protection to officers acting under process, though not identical with it, being broader. (*Wilcox* v. *Smith*, 5 Wend., 231; *McKinstry* v. *Tanner*, 9 J. R., 135; *Allen* v. *Dundas*, 3 T. R., 125; *Fowler* v. *Beebe*, 9 Mass., 231; *Coolidge* v. *Bingham*, 1 Al., 333; *Fitchburg Co.* v. *G. J. Co.*, id., 552.) The acts of the administrator were valid as those of an officer *de facto*. (*State* v. *Carroll*, 38 Conn., 449; *Parker* v. *Baker*, 8 Paige, 428; *Cocks* v. *Halsey*, 16 Pet., 71.)

*Samuel Jones*, for respondent. No jurisdiction was acquired by the surrogate. (*Allen* v. *Dundas*, 3 T. R., 125; *Griffith* v. *Frazier*, 8 Cranch; *Jochumsen* v. *Suffolk Svg's Bnk.*, 3 Allen, 87; Williams on Exers. [6th ed.], 536.) The power of a surrogate in granting letters of administration is a judicial power which cannot be delegated. (63 N. Y., 466, 472; *Powell* v. *Tuttle*, 3 id., 396; *Keeler* v. *Frost*, 22 Barb., 400; *People* v. *Coolies*, 1 Sand. Sup. Ct. R., 228; *People* v. *Barnes*, 12 Wend., 492; *Matter of Watson*, 3 Lans., 408; *Corwin* v. *Merritt*, 3 Barb., 341; 2 R. S., pt. 3, chap. 3, title 2, art.

1, § 1; 2 R. S., pt. 3, chap. 1, compared with pt. 3, chap. 2, title 1; *Paff* v. *Kinny*, 1 Brad., 1; Statutes at Large, 170, 229, 286; *Barton* v. *Winslow*, 12 Wend., 102; *Herd* v. *Shipman*, 6 Barb., 625; *Bolton* v. *Jacks*, 7 N. Y. Supr. Ct., 203.) It was proper to set up want of jurisdiction in the surrogate. (*Bolton* v. *Jacks*, 7 N. Y. Supr. Ct., 193, 203; *Crawford* v. *Ferguson*, 70 N. Y., 253.) The surrogate's court is an inferior court of peculiar, special jurisdiction. (2 Stat. at Large, 287; id., 169, 229; *People* v. *Barnes*, 12 Wend., 492; *People* v. *Corlies*, 1 Sand., 247; *Dakin* v. *Herdson*, 6 Cow., 224; *Corwin* v. *Merritt*, 3 Barb., 341; *Matter of Watson*, 3 Lans., 411; *Paff* v. *Kinny*, 1 Brad., 1; *Bloom* v. *Burdick*, 1 Hill, 139.) One, then, relying on a surrogate's decree or judgment, must allege and prove the facts necessary to give jurisdiction. (*Barton* v. *Winslow*, 12 Wend., 102.) A determination by the surrogate himself that death has occurred is essential to give jurisdiction. (*Powell* v. *Tuttle*, 3 N. Y., 396; *Keeler* v. *Frost*, 22 Barb., 400.) Even if there had been such an adjudication by the surrogate, plaintiff, not having had notice, would not be bound by it. (*Bloom* v. *Burdick*, 1 Hill, 141.) The petitioner having sworn to death only on information and belief, the evidence was insufficient. (*Miller* v. *Brinckerhoof*, 4 Denio, 120; *In re Bliss*, 7 Hill, 187; *Kingsland* v. *Cowman*, 5 id., 608; *In re Faulkner*, 4 id., 601.) The doctrine under which ministerial officers are protected by the process issued to them, although issued without jurisdiction, does not apply to this case. (*Earl* v. *Camp*, 16 Wend., 567; *Mille* v. *Martin*, 12 J. R., 32.) If one is neither actually dead nor judicially determined by the surrogate to be dead, no office ever existed of which one could be the *de jure* or *de facto* officer. (*In re Snyder*, 64 Mo., 62; *Mayor, etc.*, v. *Flagg*, 6 Abb., 302; *The Abbe Fontaine* 38 Conn., 439.)

Church, Ch. J. In another action brought by the same plaintiff as administratrix of her husband's estate against this same defendant, this court held that the payment by the

defendant to Isabella McNeil who had been appointed administratrix of the estate of the husband, was a bar to the action although it appeared that at the time the letters were issued, he was alive. (63 N. Y., 460.) In this case the defendant sets up in bar, the payment of the moneys claimed by the plaintiff, to Mrs. McNeil, who presented similar letters, purporting to have been issued by the surrogate of New York, upon the estate of the plaintiff. The only difference in the facts between the two cases, is that in this it was proved and is found by the trial judge that the petition of Mrs. McNeil was not presented to the surrogate, and that he never saw her, and never in fact acted upon the petition, and had no actual knowledge of it, nor of the issuing of the letters, that the business was done by a clerk in the office, who used a blank which had been signed by the surrogate, and left with him, and attached the surrogate's seal.

Another distinction is that in this case the contents of the petition are found, by which it appears that the petitioner Mrs. McNeil alleged the death upon the best of her knowledge, information, and belief, without other proof. The ground of the decision in the other case was that by the statute, (2 R. S., 74, §§ 23, 26,) the surrogate had power to determine the fact of death upon the evidence presented, that such inquiry was judicial in its nature, and that letters issued by him upon due proof, were conclusive authority to the administrator, so far as to protect third persons in making payments to the administrator acting upon the faith of them, and that the letters as against such persons could not be attacked collaterally.

It is now insisted that the surrogate never having in fact exercised any judicial function in respect to the matter, nor in any manner passed upon the question, the basis of the former decision is removed, and the letters should be regarded as utterly void. In view of the former decision, the question now presented is a very embarrassing one. That decision was concurred in by a majority of the court, and we do not feel justified in reviewing it upon the merits.

At common law the authorities are uniform that the jurisdiction of surrogates is confined to granting administration upon the estates of deceased persons, and that if a person is alive the letters are an absolute nullity. (*Jochumsen* v. *Suffolk Bank*, 3 Allen, 87; *Allen* v. *Dundas*, 3 T. R., 125; *Griffith* v. *Frazier*, 8 Cranch, 9; *Melia* v. *Simons* [Wis.], 19 Albany Law Journal, 198.)

In the former case the jurisdiction was held to be saved by force of our statute requiring a judicial determination by the surrogate of the fact of death. When it appears that such determination was not had it is difficult to find any ground for upholding the validity of the letters for any purpose even for the protection of innocent persons. There is no branch of the law more difficult of solution than to define when and under what circumstances the proceedings of inferior as well as superior courts may be attacked, and when they are a protection to persons acting under them. They may be held valid when the question is presented in one form, and invalid in another, and they may protect some persons and not others. The books are full of decisions, some of which are conflicting, recognizing distinctions and refinements which render the subject intricate and perplexing to deal with. I have examined the numerous authorities cited by the learned counsel engaged in this case and many others, and they are somewhat calculated to impress one with the uncertainty of the law. The apparent conflict however arises more from the difficulty of applying principles in particular cases, than in principles themselves. I have neither the time nor inclination to review the authorities, nor do I think it profitable to do so. There are some general rules that are well settled. One is that the proceedings of courts, especially of limited jurisdiction, may be attacked collaterally for want of jurisdiction over the subject-matter. Another is that if the court or officer has jurisdiction of the subject-matter, then the exercise of that jurisdiction however irregular or erroneous is conclusive until reversed. Surrogates' courts have a stinted jurisdiction, but their decrees and orders are protected, when acting within their jurisdiction.

If the surrogate has jurisdiction of the general subject-matter, and may exercise that jurisdiction in a variety of cases depending upon residence and the like, his decision after a hearing of the parties upon the question whether the case calling for the exercise of jurisdiction exists or not, is protected from collateral attack. In other words it is enough if he has general jurisdiction of the subject-matter. This general rule is sustained by the current of authority, but within this rule are many distinctions and qualifications. An elaborate review of the authorities will be found in 2 Cowen & Hill's Notes, 987.

An important point to determine in this case is, what is the general subject-matter of which the surrogate has jurisdiction? Is it to grant administration upon estates? Clearly not, but only to grant administration upon the estates of deceased persons. There is no authority conferred under any possible circumstances to grant administration when a person is living. But if a person be actually dead then the surrogate is vested with power over the general subject-matter. In the latter case he has a right to act, and although he acts erroneously his action cannot be impeached collaterally. He may commit an error as to inhabitancy, which would be sufficient to reverse his decision, but not sufficient to render it void from the beginning for the reason that he had power to act upon the subject. This principle is illustrated in *Allen* v. *Dundas* (3 T. R., 60), where it was held that payment to an executor of a forged will was a good discharge, and this was put upon the ground that the court had jurisdiction over the subject-matter, and having judicially determined the validity of the will it was good until reversed, and the distinction above referred to is recognized. Ashhurst, J., said : " The case of a probate of a supposed will during the life of the party may be distinguished from the present, because during his life the Ecclesiastical Court has no jurisdiction, nor can they inquire who is his representative, but when the party is dead, it is within their jurisdiction." And Buller, J., said : " Then this case

was compared to a probate of a supposed will of a living person, but in such a case the Ecclesiastical Court have no jurisdiction, and the probate can have no effect. Their jurisdiction is only to grant probates of the wills of dead persons."

In *Griffith* v. *Frazier* (8 Cranch, 9), the same distinction is laid down by MARSHALL, Ch. J., between an erroneous act or judgment by a tribunal having cognizance of the subject-matter, and an act of a tribunal not having such cognizance. He says : "But suppose administration to be granted on the estate of a person not really dead. The act, all will admit, is totally void. Yet the ordinary must always inquire and decide whether the person whose estate is to be committed to the care of others, be dead or in life. Yet the decision of the ordinary that the person on whose estate he acts is dead, if the fact be otherwise, does not invest the person he may appoint with the character or powers of an administrator. The case in truth was not one within his jurisdiction." By the former decision of this court, the statute was construed to extend the jurisdiction of surrogates to issue letters, so that not only may letters be issued upon the estates of dead persons, but also upon estates of persons whom the surrogate should judicially determine upon evidence were deceased. If this is the proper construction of the statute, the decision was right within the rule referred to, and the letters issued by him would be conclusive, although he may have decided upon false testimony, or may have erred in judgment. But the question here is different. It is not sought to impeach the judgment of the surrogate, but to show that he never exercised his judgment, that he never acted. It may be shown that the seal of the surrogate has been forged, for that does not impeach his judgment. (1 Williams on Ex'rs, 489, and cases cited.) It might be shown for the same reason that a blank signed and sealed had been stolen, and filled up by a third person. And I apprehend that any jurisdictional vice which does not impeach the decision of the surrogate may be shown to avoid the force of the letters. In this case while the act of the clerk in issuing the letters may not

have been criminal, it was unauthorized. His act was not the act of the surrogate. Judicial powers cannot be delegated. (*Powell* v. *Tuttle*, 3 Coms., 396 ; *Keeler* v. *Frost*, 22 Barb., 400.) To sustain this defence the letters must be held conclusive, either that the plaintiff was dead, or that the surrogate had so determined. Neither was true in fact, and the letters are left without any jurisdiction to stand upon. A mere defective exercise of power would present a different question. Here no power or judgment was exercised at all.

There is still another difficulty in maintaining this defense, and that is that there was nothing amounting to proof that the plaintiff was dead. The basis of our former decision was that the statute authorized the surrogate to decide upon evidence. Mere information and belief without any reasons for it, is not proof or evidence in any legal sense. It is quite unnecessary in this case, and it is not intended to hold that the fact that the surrogate did not act, and the defective proof would avail if the plaintiff had been dead, because then the surrogate would have had jurisdiction over the subject-matter, and subsequent irregularities and defects would not vitiate the proceedings, so as to render them void. So to speak, here was an accumulation of weakness. The plaintiff was alive ; the surrogate never decided that she was dead, and the clerk even who issued the letters had no evidence that she was dead. I think that there was too much "voidness" in this proceeding to justify any court in sustaining it, for any purpose whatever.

We have been referred to no authority holding that letters of administration although apparently genuine, are conclusive against collateral attack, upon all these points of jurisdiction. The learned counsel for the defendant invoked the rule of protection to ministerial officers in respect to which *Savacool* v. *Boughton* (5 Wend., 170), is a leading authority in this State. That rule has no application. It applies to ministerial officers who having process apparently regular are bound to act, and are hence protected in acting. The rule goes no further. It does not protect the party nor a

purchaser under such a process, however innocent he may be.

It is argued more plausibly that Mrs. McNeil should be regarded as a *de facto* administratrix. There would be force in this suggestion as to any defect short of an utter want of jurisdiction. She relies for color of authority upon the judgment of the surrogate in a case where he had no jurisdiction, and where he never acted. The case of *Allen* v. *Dundas* (*supra*), illustrates a *de facto* executor, and holds that the principle does not apply when there is a want of jurisdiction. The application of the *de facto* principle is not the same, as in the case of public officers. Executors and administrators are not public officers, and the rule of protection to those dealing with them, is more restricted than when applied to public officers. Other principles intervene in respect to the validity of judicial proceedings, which limit somewhat the application of the principle as applied to the acts of public officers. If the plaintiff had been dead, or perhaps under the former decision if the surrogate had upon evidence decided that she was dead, I am inclined to think that Mrs. McNeil would have been a *de facto* administratrix, and the defendant would have been protected, but in this case both of these jurisdictional facts are wanting.

We are not insensible to the appeal of the learned counsel upon the propriety of protecting innocent persons in dealing with administrators acting under an apparent legal authority, and in our former decision, we evinced our appreciation of this consideration by going to the very verge of judicial precedent for the purpose of sustaining it, but we do not feel justified in going farther. The defendant is not the only innocent party in this transaction. The plaintiff is equally innocent. She has had her property taken from her without her consent, and without authority of law, and is entitled at least to a measure of protection.

I am of opinion that the order of the General Term must be affirmed, and judgment absolute given for the plaintiff.

All concur, MILLER, J., concurring in result.

Order affirmed.