Truax, J.
Among the privileges or franchises granted to the corporation of the city of New York by the state is the privilege of having certain officers, named in the charter, and among these officers are the commissioner of public works and the counsel to the corporation.. The *229 privilege of appointing is conferred by the charter upon the mayor of the city, while the right to confirm or reject the appointment is vested in the board of aldermen.' This power of appointing and confirming is a trust conferred upon the mayor and the board of aldermen, and the method of using this trust is subject to the control of the courts. This trust is to be used for the benefit of the people of the city, each one of whom is a cestui que trust. Section 101 of chapter 410, Laws 1882 (Consolidation act) declares that the common council and the several members thereof are trustees of the property, funds and effects of the said city, and makes such trustees subject to all the duties and responsibilities imposed by law on trustees.
It is to the prejudice of the citizens and of each citizen, if an appointment to office be made through bribery, corruption or other unlawful means, for the law presumes that he who buys an office will make his purchase good, to the manifest detriment of the public (2 Blackstone’s Com. 36, 37).
It is well settled that public bodies and public officers may be restrained from proceeding in violation of law to the prejudice of the public or to the injury of individual rights. A usurpation of power may be prevented, and an alienation or renunciation of a public franchise be forbidden and restrained. To the extent that public officers and public bodies are trustees either of franchises or property for the benefit of the public, they are amenable to the jurisdiction of courts of equity (People v. Canal Board, 55 N. Y. 390). In the exercise of this jurisdiction the court proceeds upon substantially the same principles as those which govern its interference in cases of trust; a municipal corporation being regarded in equity as charged with and made the depositary of a public trust, and thus amenable to the jurisdiction of equity for a breach of that trust (Christopher v. Mayor, &c., 13 Barb. 567 ; Milhau v. Sharp, 15 Ib. 193 ; Stuyvesant v. Pearsall, Ib. 244; Dudley v. Trustees, &c., 12 B. Mon. 615).
It was suggested on the argument that the appoint *230 ment and confirmation were legal, and that it was the taking of bribes that was illegal, and that therefore, only the bribe-taking should be enjoined. It seems to me that this distinction is not a just one, but that the appointing and confirming an officer through bribery and corruption are the illegal acts which may be enjoined. As long ago as Fermor’s case (in the year 1662), it was said that the law doth so abhor fraud and covin, that all acts, as well judicial as others, and which of themselves are just and lawful, yet, being mixed with fraud and deceit, are in judgment of law, wrongful and unlawful. The appointment and confirmation of an officer by bribery is made a felony (and therefore illegal) by section 58 of chapter 410, Laws 1882, which provides that every member of the common council, or every person who shall promise, offer or give, or cause, or aid or abet in causing to be promised, offered or given ... to any member of the common council, or any officer of the corporation, . . . any money, goods, right in action or other property, or any thing of value, or any pecuniary advantage, present or prospective, with intent to influence his vote, opinion, judgment or action on any question . . . which may then be pending before him in his official capacity, shall be deemed guilty of a felony ; and every officer who shall accept any such gift or promise .. . shall be deemed guilty of a felony, and shall upon conviction be disqualified from holding any public office, . . . and shall be punished by imprisonment or by a fine, or both.
It was contended on the argument that the act enjoined was a legislative act and discretionary, and therefore that the court had no jurisdiction to prohibit it. This court held in Davis v. Mayor, &c., of New York (1 Duer, 451), that this contention is not true when applied to a subordinate municipal body, which although clothed to some extent with legislative and even political powers, is yet, in the exercise of all its powers, just as subject to the authority and control of courts of justice, to legal process, legal restraint and legal correction, as any other body or *231 person, natural or artificial. The supposition that there exists an important distinction, or any distinction whatever, between a municipal corporation and any other corporation aggregate, in respect to the power of the courts of justice over its proceedings, has no foundation, and is as destitute of reason as it is of authority. The conclusion from these remarks is, continues Judge Duer in the case above cited, that a court of equity will not interfere to control the exercise of a discretionary power, when the discretion is legally and honestly exercised, but will interfere whenever it has grounds for believing that its interference if necessary to prevent abuse, injustice or oppression, in the violation of a trust, or the consummation of a fraud. It will interfere and it is bound to interfere, whenever it has reason to believe that those in whom the discretion is vested are prepared illegally, wantonly or corruptly to trample upon rights and sacrifice interests which they are specially bound to watch over and protect 1 Duer, 498); and the same ruling was made by Judge Gilbert, in Negus v. City of Brooklyn (62 How. 291). ,
Judge Duer then proceeded to consider whether the act of the common council in granting the right to lay a railroad track in the streets of this city was or was not a legislative act, and the conclusion that he arrived at is that it is not a legislative act. This is also the conclusion to which Judge Bosworth came in the same case (see 1 Duer, 508), and is the conclusion arrived at by the court of appeals in the People ex rel. Davis v. Sturtevant (9 N. Y. 263) and in Milhau v. Sharp (21 N. Y. 611).
Now, if granting a franchise to a railroad company is not a legislative act, even though it takes the form of a resolution of the common council (9 N. Y. 213), how can it be said that confirming the mayor’s appointment is a legislative act ? The power of confirming is not given to them by chapter 4 of the Consolidation act above referred to, which is the chapter that defines their legislative powers, but is given to them by chapter 5 of that act, which chapter defines the powers of the mayor of the *232 city. The ordinances or resolutions of the board of aldermen (their legislative acts) must be approved by the mayor before they take effect (section 75 of chapter 410, Laws 1882), while such approval of the act of the board of aldermen in confirming or rejecting the mayor’s appointments is not required. All that the board of aldermen is required to do is to give its consent, or refuse so to do. The act says that the mayor shall nominate, and, by and with the consent of the board of aldermen, appoint the heads of departments (§ 106).
But, at any rate, the act of the mayor in nominating is not a legislative act, and if the act complained of is corrupt and fraudulent and an abuse of trust, it may be restrained by injunction (90 N. Y. 410), or set aside when made (Excise case, 1 Lancaster Law Rev. 318).
I am of the opinion, that in an action brought by the proper party, in which action sufficient facts are properly alleged, an injunction restraining an illegal or corrupt appointment to a public office may be issued.
The action is brought by Theodore Roosevelt and others, but it is impossible to say on what grounds or under what statute it is brought, because the complaint is not before the court.
The counsel for the plaintiffs said on the argument that the action was brought under chapter 531, Laws 1881, and the bond given on obtaining the injunction is the bond required by that act; but there is nothing in the papers before me to compel the plaintiffs to allege the facts required by that act to maintain an action, or to prevent them from alleging any facts that they see fit to allege.
The right to an injunction in an action brought pursuant to this act must come under section 603 of the Code of Civil Procedure, which is, in substance, the same as the first clause of section 219 of the Code of Procedure. It has frequently been held that if such right was sought under the first clause of section 219, such right must appear upon the face of the complaint itself by necessary and proper averments ; and it must likewise appear thereon that the *233 plaintiff is entitled to a final injunction, and such injunction must be prayed for in due form (Thompson on Prov. Rem. 206). This construction seems to have been applied to the present Code by the court of appeals in McHenry v. Jewett (90 N. Y. 61, 62), where it is said that a temporary injunction is unauthorized when it does not appear from the face of the complaint that the plaintiff is entitled to the final relief for which the action is brought. Such fact cannot be said to appear on the complaint when there is no complaint. For this reason I cannot say that the action is brought under the act of 1881, nor can I look to the affidavits for facts to supply the deficiency of the .complaint.
On the argument of the motion, the counsel for the plaintiffs contended that section 628 of Code of Civil Procedure gave the court power to issue an injunction before the service of the complaint, and this construction was conceded to be right by one of the counsel for the defendants, though another of the counsel for the defendants denied it. Section 603 provides that where it appears from the complaint that the plaintiff demands and is entitled to a judgment against the defendant restraining the commission or continuance of an act, the commission or continuance of which, during the pendency of the action, would produce injury to the plaintiff, an injunction order may be granted to restrain it. In the action at bar, the right to an injunction depends upon the nature of the action. The nature of the action can only be ascertained from the complaint, and the provisions of section 628, that the granting or denial of an application to vacate an injunction does not prejudice a subsequent application founded upon the failure of a complaint which had not been made at the time of the former application, to set forth a cause of action sufficient to entitle the plaintiff to the injunction order upon one or more grounds recited therein, means, if it means anything, that when an injunction has been granted, as provided by section 603, i. e., on a complaint, and an amended complaint is served after granting or denying a motion *234 to vacate it, such vacation of the injunction, or refusal to vacate, shall not prejudice another application for an injunction, or to vacate an injunction if the amended complaint sets forth, or does not set forth a cause of action sufficient to entitle the plaintiff to the injunction order.
I am of the opinion that an injunction should not be granted on affidavits alone, and without a complaint, and for this reason the injunction herein should be vacated.
It is alleged in the affidavits on which the injunction was granted that the mayor of the city of New York is about to make certain nominations for certain offices, and that such nominations are about to be confirmed through a corrupt combination with the board of aldermen. These allegations are denied by some of the members of the board of aldermen. The mayor, however, has not denied them, and for this reason, whatever allegations against the mayor are contained in the moving papers are admitted. So far as he is concerned, the only question is, are these allegations competent evidence ? If they are not, he is not bound to deny them.
John O’Brien swears that he is acquainted with Franklin Edson, the mayor of the city of New York; that he was one of the bidders upon the work recently let by the aqueduct commissioners in this city for the building of a new aqueduct; that after he had put in his bid for the said work, and after the several bids had been opened and the lowest bidder ascertained, Mr. Edson, who is and was one of the aqueduct commissioners, sent a messenger requesting him to come to his (the mayor’s) office; that he went there and saw him; that he said that he (the mayor) had sent out two or three messengers to find him and he was very anxious to see him ; that they went into the mayor’s private office, and that the mayor then said to the affiant: “ Why cannot you arrange with Brown, Howard & Oo. for each to take half the work ?” that Mr. O’Brien said : “No ; I am entitled to the whole of the work, and ought to have it,” and that Mr. Edson then said if he *235 would get Mm (Edson) two aldermen to confirm Ms nomination of commissioner of public works—Fitz J ohn Porter—lie (Edson) would, as a member of the aqueduct commission, vote to give him the whole of the work. This affidavit shows that the mayor was endeavoring by corrupt means to secure aldermen to vote for the confirmation of Fitz John Porter; it does not show that the mayor has attempted to secure the confirmation of any other person. The facts stated in this affidavit do not warrant the court in restraming the mayor from making any nomination. They only warrant an injunction restraming the nomination (and perhaps confirmation) of one particular individual.
It therefore becomes necessary to examine the other affidavits. They appear on the first reading to state facts, but a careful exammation shows that they state conclusions and not facts.
The affidavits of James A. Lyons and Patrick Handibode relate only to the confirmation of Fitz John Porter, and in that respect are to be classed with Mr. O’Brien’s affidavit. But they prove notMng; they are hearsay and are not admissible m evidence agamst any of the defendants. The affidavit of James H. Londergan was for the same reason stricken out on the argument, and the only other affidavit that purports to state any facts is that of Mr. Johnson. He swears, among other tilings, that he is “informed and believes that it is the purpose of certarn persons by connivance and corrupt combination, unlawfully and corruptly to secure the appointment to important offices in this city of certain persons by means of bribes and gross corruption.”- The officers referred to are the counsel to the corporation and the commissioner of public works. He further alleges, on mformation and belief, and charges “that there has been formed" and is about to be carried out a corrupt bargain and conspiracy by wMch it is and will be attempted to secure the appointment of persons to said offices, on condition that when appointed such heads of departments will appomt certain *236 other persons to certain other subordinate offices or positions,” and that certain aldermen “ have corruptly agreed to vote in favor of the confirmation of certain persons to be appointed by the mayor to said offices, on condition that either they or certain of their friends be appointed to fill the said subordinate office.”
These allegations are too indefinite and uncertain to sustain an injunction. The affiant does not give the source of his information or the grounds of his belief. He does not state who the persons are that are to be corruptly appointed and confirmed, but refers to them by the vague appellation of “certain persons.” The mere allegation that there is a corrupt bargain and conspiracy, unless sustained by other facts, amounts to nothing, and is only a conclusion (Rosenberg v. Block, 49 Super. Ct. 488; Putnam v. Hubbell, 42 N. Y. 107). “ Mere information and belief without any reasons for it is not proof or evidence in any legal sense ” (Roderigas v. East River Savings Institution, 76 N. Y. 323). In this case the court of appeals held that a petition that alleged the death of a person upon the best of the knowledge, information and belief of the petitioner, was not due proof of the death, such as would give the surrogate jurisdiction to issue letters of administration (76 N. Y. 316). And it has been held that an affidavit stating upon information and belief that a bank is insolvent, is not sufficient evidence to authorize the granting of an injunction, although the bank has suspended specie payments (Livingston v. Bank of New York, 26 Barb. 304-307). And where facts are stated on information and belief, the sources of information and grounds of belief should be given (People v. Mayor, &c., 9 Abb. 253). The rule is well stated in High on Injunctions, sections 28 and 35, as follows : “When fraud is relied upon as the foundation for an injunction, the allegations of the bill must be of specific and definite acts of fraud, and not mere general averments; and in the absence of such specific allegations a court of equity will not interfere, although irreparable injury is alleged ” *237 . ... “ An injunction, being a harsh remedy, "will not be granted in the first instance, except upon a clear prima facie case and upon positive averments of the equities on which the application for the relief is based. Nor will merely argumentative allegations or inferences from the facts stated suffice to meet the requirements of this rule.”
It is also to be borne in mind that the allegations of fraud and conspiracy in the moving papers are denied by seven of the aldermen.
For the reasons above stated the injunction is vacated, with costs.
The questions involved on this motion are novel and of the greatest importance. I have examined carefully the reports of this state, of the other states, and of Great Britain, and the text books on corporations, injunctions and equity, and I have not been able to find a case like this. I have found cases in which courts of equity have restrained municipal corporations from corruptly granting a franchise. Of this nature are the cases of Davis v. Mayor, &c. (1 Duer, 451); Christopher v. Mayor (13 Barb, 567); Milhau v. Sharp (15 Id. 193). I have found eases in which other corporations have been restrained from illegal action where such action would be to the detriment of their stockholders, and in the Excise cases (1 Lancaster Law Review), the corrupt action of a board of excise in granting a license to sell liquors through bribery, was set aside. I cannot see why courts cannot restrain the doing of an illegal act if they have the power to set aside that act when done. To hold otherwise would be to allow a person who has corruptly secured his appointment to an office to hold that office until his appointment was set aside. It seems to me that I have not extended too far the doctrine of such cases as Davis v. Mayor ; People v. Sturtevant ; People v. Dwyer ; People v. Canal Board, in holding that a court of equity can restrain public bodies and public officers from making a corrupt appointment to an office to the prejudice of the public. So to do is not controlling the discretion of a legislative body.