C. GRAY BOLTON et al., Appellants, *v.* WILLIAM SCHRIEVER et al., Respondents.

|135|65|
|d146|331|
|135|65|
|159|106|
|135|65|
|j172|¹564|

A surrogate before admitting to probate the will of one who was at his death an inhabitant of the state, and died seized of property therein, and issuing letters testamentary thereon, has power and is bound to inquire and to decide as to whether the testator was an inhabitant of the county at the time of his death, and if that officer decides that he was, upon evidence legally tending to support his decision, this decision may not in the absence of fraud or collusion be questioned collaterally.

Where, therefore, prior to the passage of the acts providing in substance that the jurisdiction of a surrogate, in the cases specified, when the necessary parties were duly cited or appeared shall not in the absence of fraud be questioned collaterally (Chap. 359, Laws of 1870; Code Civ. Pro. § 2473), a resident of the state died seized of real estate in the county of New York, and upon petition of the executor named in his will, which alleged that the decedent was at or immediately preceding his death an inhabitant of the county, the will was by decree of the surrogate thereof admitted to probate and letters testamentary issued thereon, after a hearing and judicial investigation, at which hearing the heirs at law who were infants appeared by guardian, *held*, that the decree was in effect a decision, that the decedent was, at the time of his death, an inhabitant of said county; and that this could not be questioned in an action of ejectment brought by the heirs.

*It seems* that if no contest had been made, and no evidence given on the subject of inhabitancy except the sworn allegation in the petition the surrogate could have relied upon the fact so stated, and his decision would be regarded as conclusive, subject only to attack by a direct proceeding to review it.

*Bolton* v. *Jacks* (6 Robt. 166), overruled.

When the defeated party in an action of ejectment takes a new trial as authorized by the Code of Civil Procedure (§ 1525), paying the costs including an extra allowance, this does not prevent the granting another extra allowance against him in case of his defeat upon the second trial.

(Argued May 6, 1892; decided October 4, 1892.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made December 7, 1891, which affirmed a judgment in favor of defendants, entered upon a verdict directed by the court and also affirmed an order directing an extra allowance.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward C. Perkins* for appellants. The probate of the supposed will of Dr. Talmadge was void, and as there was no other evidence of the existence of a will, the plaintiffs, as his heirs, have title to the premises in question. (*Bolton* v. *Jacks,* 6 Robt. 192; *Roderigas* v. *E. R. S. Bank,* 63 N.Y. 460; Laws of 1837, chap. 350, § 1; *Jochumsen* v. *S. S. Bank,* 3 Allen, 87; *Thomas* v. *People,* 107 Ill. 517; *Devlin* v. *Commonwealth,* 101 Penn. St. 213; *Lancaster* v. *W. L. I. Co.,* 62 Mo. 12; *Lavin* v. *E. Bank,* 18 Blatchf. 5; *Melia* v. *Simmons,* 45 Wis. 334; Redf. on Surr. 48, 49 n. 1; *Jochumsen* v. *S. Bank,* 3 All. 87; *Holyoke* v. *Haskins,* 5 Pick. 20; 9 id. 259; *Duncan* v. *Stewart,* 21 Ala. [N. S.] 408; *Morgan* v. *Dodge,* 44 N. H. 259; *Cutts* v. *Haskins,* 9 Mass. 547; *Griffith* v. *Frazier,* 8 Cr. 9; *Thompson* v. *Whitman,* 8 Wall. 460.) The probate is void because it appears that the surrogate had no evidence before him as to inhabitancy, and did not adjudicate upon the question. (*Roosevelt* v. *Kellogg,* 20 Johns. 208; *In re Wrigley,* 8 Wend. 134, 140; *Frost* v. *Brisbin,* 19 id. 11; *Kennedy* v. *Ryal,* 67 N. Y. 386; *Bell* v. *Pierce,* 51 id. 17.) Adverse possession was not made out. (Code Civ. Pro. § 414, subd. 4; *Howell* v. *Leavitt,* 95 N. Y. 618.) Respondents were not entitled to an extra allowance. (*Flynn* v. *E. L. Ins. Co.,* 18 Hun, 212; *Bank of Mobile* v. *P. Ins. Co.,* 8 Civ. Pro. Rep. 212; *Brewer* v. *Penniman,* 72 N. Y. 603; 11 Hun, 147; *McDonald* v. *Mallory,* 14 J. & S. 62; *Adams* v. *Nellis,* 59 How. Pr. 385.)

*Edward W. S. Johnston* for respondents. The decree of the surrogate admitting this will to probate cannot be attacked collaterally in this proceeding. (*Monnell* v. *Dennison,* 8 Abb. Pr. 401; *Bolton* v. *Brewster,* 37 Barb. 389; *Bumstead* v. *Read,* 31 id. 661; *People* v. *Judges, etc.,* 20 Wend. 656; *Anderson* v. *Anderson,* 112 N. Y. 104; *Roderigas* v. *E. R. S. Inst.,* 63 id. 466; *In re Hammersly,* 9 Civ. Pro. Rep.

293; Code Civ. Pro. § 2627; *In re Kellum,* 50 N. Y. 298; *McCarthy* v. *Marsh,* 5 id. 263; *Porter* v. *Purdy,* 29 id. 106; *People* v. *Waldron,* 51 How. Pr. 221; *Lewis* v. *Dutton,* 8 id. 103; *Kinnier* v. *Kinnier,* 45 N. Y. 535; *Fisher* v. *Bassett,* 9 Leigh. 119; *Andrews* v. *Avery,* 4 Gratt. 229; *Abbott* v. *Coburn,* 28 Vt. 667; *Burdett* v. *Silsbee,* 15 Tex. 615; *Guilford* v. *Love,* 49 id. 715; *Johnson* v. *Beazley,* 65 Mo. 264; *Dequindle* v. *Williams,* 31 Ind. 444; *Irwin* v. *Lowry,* 7 How. [U. S.] 180; *Shroger* v. *Richmond,* 16 Ohio St. 445; *Rigney* v. *Coles,* 6 Bosw. 479; *Courseins Case,* 3 Gr. Ch. 408; *Smith* v. *Hilton,* 50 Hun, 237; *Nelson* v. *Yates,* 37 id. 55; *Home* v. *Rochester,* 62 N. H. 348; *Devlin* v. *Commonwealth,* 102 Penn. St. 277; *Emerson* v. *Ross,* 17 Fla. 122, 127; *Price* v. *Winter,* 15 id. 66, 69; *Comstock* v. *Crawford,* 3 Wall. 403; *Brockenborough* v. *Meltor,* 55 Tex. 493; *Arnold* v. *Arnold,* 62 Ga. 627; *Taut* v. *Wigfall,* 65 id. 412; *Irwin* v. *Scriber,* 18 Cal. 499; *Quidort* v. *Feigeaux,* 18 N. J. Eq. 472; *Galpin* v. *Page,* 18 Wall. 350, 365.) All disputed questions of fact having the support of any evidence in their favor are to be deemed found in favor of the defendants upon this appeal. A wrong reason assigned by the judge for the direction of a verdict is of no moment. (*Sutter* v. *Vanderveer,* 122 N. Y. 652.) Tallmadge was at his death an inhabitant of the county of New York. (*Ferguson* v. *Crawford,* 86 N. Y. 610; *Morrell* v. *Dennison,* 17 How. Pr. 424; *Duprey* v. *Wurtz,* 53 N. Y. 556; *Isham* v. *Gibbons,* 1 Bradf. 69; *Graham* v. *Pub. Admr.* 4 id. 127; *Crawford* v. *Wilson,* Id. 504; *Lee* v. *Stanley,* 9 How. Pr. 372; *Lauderdale Peerage Case,* 17 Abb. [N. C.] 439; *People* v. *Platt,* 50 Hun, 454.) It is not necessary for the defendant to prove actual possession of the land in question in any of the intermediate grantors from whom she derives title after having proved the actual possession under a paper claim of title in the trustees of Esther Nelson in 1853. (*Bogardus* v. *Trinity Church,* 4 Sandf. Ch. 633; *Doolittle* v. *Tice,* 41 Barb. 181; *Frigate* v. *Pierce,* 49 Mo. 441; *Tourtellotte* v. *Pearce,* 42 id. 915; *Carleton* v.

*Mayor, etc.,* 113 N. Y. 284; *Foulke* v. *Bond,* 12 Vroom. 527; *Blanchard* v. *Moulton,* 63 Me. 434; *Lane* v. *Gould,* 10 Barb. 254; *Sherman* v. *Kane,* 86 N. Y. 65; *Robinson* v. *Phillips,* 56 id. 634; *Acker* v. *Acker,* 81 id. 143; *Clarke* v. *Gibbons,* 83 id. 107; *Smith* v. *Long,* 12 Abb. [N. C.] 114.) James Clinton Bolton, who was the plaintiff at the time of the trial, had no standing in court, and whatever remedy the plaintiff had was in partition and not in ejectment. (*Paschal* v. *Acklin,* 27 Tex. 174; *Graham* v. *Whitely,* 2 Dutch. 254.) The court having granted an extra allowance and the General Term having affirmed the order granting the allowance, this court has no jurisdiction to pass. upon this question except in a case where the allowance exceeds the amount permitted by the statute. (*Shiels* v. *Wortmann,* . 126 N. Y. 650; Code Civ. Pro. § 1525; *Steam Co.* v. *D. M. Co.,* 61 Hun, 336.)

PECKHAM, J. This is an action of ejectment to recover possession of a lot of land on Tenth avenue, between 33d and 34th streets, in the city of New York. The land belonged at the time of his death to one Theodore B. Talmadge, who died in January, 1841. Mr. Talmadge is the common source of title, the plaintiffs claiming as his heirs at law, while the defendants claim, through his will, which in May, 1841, was proved before the surrogate of the county of New York, and letters granted. to the executor named therein. It is claimed by plaintiffs that Mr. Talmadge died in the county of Columbia, and that at the time of his death he was not an inhabitant of New York county, and the surrogate of that county had no jurisdiction to take proof of the will or to grant letters testamentary thereon, and as there was no other proof of the execution of the will the defendants made out no title to the land and the plaintiffs. were entitled to recover it as heirs at law of Talmadge.

There was a hearing before the New York surrogate and a judicial investigation, and the result was the judgment or decree admitting the will to probate. The infant daughters of the testator appeared on this investigation by guardian

appointed by the surrogate. This judgment, now over fifty years old, is assailed by the plaintiffs, and if it can be success-fully attacked in this collateral manner it may follow that the defendants, by reason of this great lapse of time, will have no means of proving the will and thus will have no defense to interpose to the plaintiffs' claim, although they have relied upon the sufficiency of a judgment over half a century old decreeing that the will of Mr. Talmadge was properly proved, and under which their mediate grantor( Mr. Talmadge's exec-utor) had power to convey the land in dispute.

The petition of the executor named in the will to the surro-gate of New York, alleged that the deceased was at or imme-diately previous to his death, an inhabitant of the county of New York, by means of which the proving of the will belonged to such surrogate.

The surrogate, in admitting the will to probate and issuing letters testamentary to the executor, in effect decided the fact of inhabitancy, for it was a fact necessary for the surrogate to decide before admitting the will to probate or granting letters, and his decision of that fact, based upon evidence having a legal tendency to support it, ought, it would seem, on general principles, to stand until reversed or set aside, even though it were erroneous.

Much of the general importance which might otherwise attach to the decision of this question is taken from it by reason of legislation upon the subject. In 1870 an act was passed which applied to judgments of surrogates' courts in New York county, and in 1880 a similar act was passed in regard to those courts in all the other counties of the state. (Chap. 359 of the Laws of 1870; Code Civ. Pro. § 2475.) These acts provided in substance that the objection to the jurisdiction of such judgments should not be taken collaterally.

We are of opinion that in a case like the present the same rule obtains, which has been authoritatively declared as to future cases by the statutes cited. Under these circumstances we do not feel called upon to enter into any detailed and extended discussion of the grounds for our decision. It is

unnecessary to go as far, in order to uphold the decision of the courts below, as the court went in the decision of the first *Roderigas* case (63 N. Y. 460). This case differs from that in the main and important fact that there was here an estate of a deceased person to administer upon. Mr. Talmadge died in the state of New York and at the time of his death he was an inhabitant thereof. In the *Roderigas* case letters were issued to an administrator upon the estate of a living man, but who was in effect declared by the judgment to be dead.

We think that where the individual died an inhabitant of the state by reason of which there was in fact an estate to be administered upon, and the only question is which of the Surrogate's Courts in the counties of the state should act, there is in that case jurisdiction in one of these counties over the subject-matter, that is, over the administering upon the estate of a deceased person dying an inhabitant of the state, and which surrogate is to exercise such jurisdiction depends upon the fact as to which county deceased was an inhabitant of at the time of his death. The decision of such question where evidence is given, and upon a hearing of the parties, ought to be and, we think, is conclusive upon any collateral attack. Under our statute as to proof of wills, although it does not in terms provide that the petition shall state, or that the surrogate shall inquire and decide as to the fact of inhabitancy, yet we think the fair implication arising from a perusal of the whole statute upon the subject, is that the surrogate has power and is bound before admitting the will to probate or issuing letters to institute the inquiry and to decide upon the fact of inhabitancy. (Laws of 1837, chap. 460, §§ 4, 5, etc.)

As the surrogate is directed to inquire as to the names and places of residence of the *heirs* of the *testator*, the implication is a necessity that he must first inquire whether there was a testator. Within the meaning of this statute, there could be no testator if there were no deceased person, neither could there be any heirs of one who was then alive. The surrogate is to take proof of these facts where the testator died an inhabitant. (§ 1 of above cited act.) He must, therefore, as

part of his statutory duty, inquire as to that fact of inhabitancy before taking the proof of the will.

Another statute authorizes the surrogate to issue subpœnas and take testimony in all matters material to any inquiry pending in his court. (2 Rev. S. 221, § 6.) The duty to investigate and decide upon the fact of inhabitancy is necessarily and naturally to be implied from the whole provisions of the statute relating to wills and their probate and such duty is to be performed before the will is admitted or letters issued. If no contest is made and there is no evidence upon the subject of the inhabitancy of the testator one way or the other, except the sworn allegation in the petition, I do not see why the surrogate may not rely upon the fact so stated. Whether, when the fact thus appears in the sworn petition addressed to the surrogate, such fact shall be resworn to by the petitioner or some one else upon an oath administered by the surrogate himself is matter which, as it seems to us, is not of a jurisdictional nature. The surrogate may regard the oath taken to the petition as sufficient *prima facie* evidence, although the statute does not in terms require the fact of inhabitancy to be stated in the petition. If it be so stated and sworn to and no evidence is offered on the other side and no issue raised as to the truth of the allegation in any manner or form, the decision of the surrogate should be regarded as conclusive, subject only to attack by a direct proceeding to review it. It might happen that where there is evidence *pro* and *con*, the decision would appear to be erroneous, and for that reason it ought to be reversed, but unless a direct attack be made upon it, the judgment should remain. This is upon the principle that the surrogate must decide upon some evidence the fact of inhabitancy before he can go further, and when he does so decide, although erroneously, the decision must stand until reversed.

The nature of a judgment which admits a will to probate is somewhat similar to that of one *in rem*. The *res* which the court takes into its hands for purposes of administration as representative of the state, is the property which was once

possessed and owned by the deceased, who died an inhabitant of the state. Civilized states have for generations past recog, nized their obligations to specially protect that kind of prop, erty. That obligation arises the moment the death occurs. The obligation assumed has been not only that of protection of the property, but also that of the distribution thereof to those who are living and who come within the rules of law governing the subject. How great the right of testamentary disposition should be and under what rules and regulations it should be permitted, are questions which have been differently decided by different nations and by the same nations at different times. Such rights are matters of municipal regulation. The right to inherit from, or to receive by gift, under the will of a deceased person is recognized and protected by the state, and from the fact of such recognition and protection the state owes the duty to see to it that the estate of a deceased person shall pass in accordance with the law which obtains in the state when the death occurs.

To prevent contention and to achieve a peaceful distribution of the estate under the rules of law, and to protect the rights of the creditors of the deceased, all civilized states have created tribunals of a judicial nature, whose function and duty it is to represent and exercise the powers of the state in the course of administration, and whose judgments determine the rights of the respective parties interested in the property as such rights are made to appear. The general jurisdiction over matters of this nature belongs to the state itself by reason of its general sovereignty. The practical exercise of the jurisdiction is vested in the so-called Courts of Probate or Surrogates'. Courts.

In construing the language of the statute creating such courts, the fact must continually be borne in mind that the state is creating a tribunal or tribunals for the purpose of fulfilling its general obligations to all its inhabitants to protect and distribute, according to law, that which was once the property of one of their own number. That obligation is as broad as the sovereignty of the state itself. In the organiza-

tion of the tribunals which are to exercise this jurisdiction, although the language of the statute may create a separate and distinct tribunal for each county in the state, and upon certain facts grant jurisdiction to one of them to the exclusion of all others, yet the facts upon which the jurisdiction is given to the court of one county instead of to another are merely incidental, partaking somewhat of the character of matters of procedure, the main fact being the actual death of an individual who, at the time of his death, was an inhabitant of the state. That is the jurisdictional fact, upon the existence of which is founded the duty of the state to protect and distribute the property according to law. Whether one or the other of the Surrogates' Courts in the various counties shall administer upon the estate, and thus fulfill the obligation which lies with the state itself, is a question which the legislature has provided for, and it depends, among other things, upon the fact of inhabitancy. This fact the surrogate to whom the matter is presented must decide, and if he decide that it exists, and upon evidence which legally tends to support his decision, under such circumstances, we think, it ought to stand until reversed. This is believed to be the general rule. It is a matter of very trifling importance, except upon the mere question of convenience, which of such Surrogates' Courts shall take the proof as to the due execution of the will, and grant letters testamentary thereon. For the purpose of the orderly administration of the estates of deceased persons who died inhabitants of our state, the legislature has provided certain rules governing the subject, and has also provided certain conditions upon which the power of a surrogate to take jurisdiction of the matter depends; the subject-matter, however, of the jurisdiction is the administration of the estates of deceased persons, and over this subject-matter the state has granted to the surrogate of each county general jurisdiction. It is to be exercised upon various conditions, as was said by Church, Ch. J., in the second *Roderigas* case (76 N. Y. 316), dependent upon residence and the like, and the decision of the

surrogate of one county, after a hearing of the parties upon the question whether the case calling for the exercise of the jurisdiction of his court, or the Surrogate's Court of some other county, exists or not, should be conclusive in all collateral proceedings.   The jurisdiction to administer is bestowed upon each surrogate to the exclusion of all others, where the facts exist which are named in the statute.   It is granted to him, however, out of the general and complete jurisdiction resting with the state over the entire subject of administration upon the estates of deceased inhabitants, and that general jurisdiction has been exercised by the state in the creation of a tribunal in each county for such purpose of administration, and when the question of jurisdiction arises before one of such courts where the deceased died an inhabitant of the state, and the right of administration attaches to the Surrogate's Court of some county, it must, in the nature of things, be decided by the surrogate before whom it comes, and being matter incidental only in its nature, the decision of the surrogate, founded upon some evidence, must be conclusive, even though erroneous, except upon a direct review.   I am aware that much has been written by the courts of the various states upon these questions of jurisdiction of courts of probate and the conclusiveness of their judgments.   Decisions both ways have been reached.   Criticisms have also been made in regard to the decision of the first *Roderigas* case.   It is not needful to refer to them, or to again renew the discussion which, as to this state, was ended by the decision in that case.   The question is alluded to and the various cases cited in the first volume of the "Treatise on the American Law of Administration," by I. G. Woerner (§ 208 *et seq.*, and notes).

There is in the nature of things a broad distinction between the case of the granting of letters of administration upon the estate of one not in fact dead, and the granting of letters upon the estate of one who was, at the time of his death, an inhabitant of the state, but not of the county where the will was proved, although the surrogate upon some evidence erroneously decided that he was.

It is quite unnecessary and wholly unprofitable to enlarge upon it here.

We do not intend by this decision to attack the principle or to shake the authority of the first *Roderigas* case (63 N. Y. *supra*), for we simply say it is not necessary to here go so far as that case goes. In the opinions delivered in the two *Roderigas* cases will be found much of the learning on this subject, and a citation to most of the decided cases then reported and bearing upon the question.

In this record we think it appears that there was evidence enough to call upon the surrogate of New York to decide upon the question of the inhabitancy of Mr. Talmadge, and the surrogate, by admitting the will to probate and issuing letters testamentary, did in fact decide that Mr. Talmadge was, at the time of his death, an inhabitant of New York county, and this conclusion must, in such an attack as this, be a bar to a reopening of that question. This view of the main issue involved in this case calls for the affirmance of the judgment.

In *Bolton* v. *Jacks* (6 Robt. 166) a contrary result was arrived at by the Superior Court of New York in a very elaborate and learned opinion. With many of the views therein expressed as to the right to question a judgment rendered without jurisdiction we entirely concur, but for the reasons above given we think they are inapplicable to the particular facts of this case.

Upon this appeal the plaintiffs seek to review the order granting an extra allowance of costs to the defendant. The ground of the appeal is that a new trial herein was taken by plaintiffs under the section of the Code (§ 1525) granting such right as, of course, upon payment of costs, and that, included in the costs which plaintiffs paid when availing themselves of the right to a new trial, was the amount of an extra allowance granted by the court after the former trial. The plaintiffs contend that but one extra allowance can be collected in the same action. This precise question has already been determined adversely to the plaintiffs' view in the case of *Wing* v. *De La Rionda* (131 N. Y. 422).

We have considered the other questions raised by the appellants, but we do not think that any error prejudicial to them appears in the record.

The whole judgment should be affirmed, with costs.

All concur, except GRAY, J., taking no part.

Judgment affirmed.