## SUPREME COURT.

In the matter of JAMES, administrator, &c. agt. ADAMS and others.

A *surrogate* obtains jurisdiction of the estate of an intestate, not by the *citations* of the proper parties before him, but by the *residence of the intestate*.

Where the *intestate* before his death deposited with the defendants as brokers, $675.75 as ticket agent of a railroad company, which money was mingled with that of the defendants and became undistinguishable, and the defendants a few days subsequent to the death of the intestate paid over to the company an equivalent amount, taking an indemnity,

*Held*, on an equitable accounting by which a balance of $150 only was found to be due the company, that the payment over to the extent of the remainder, was in law a conversion of the money by the defendants; and the company having no just right either legal or equitable to it, could give no valid discharge on its receipt.

*Held*, also, that *interest* on the remainder was properly allowed against the defendants.

*New York Special Term, September*, 1859.

MOTION for a new trial on report of a referee.

ROOSEVELT, Justice.. The plaintiff sues as administrator of Barker. His authority, it is said, is void, because the proper parties were not duly cited before the surrogate. Conceding the objection to be well founded in fact, it is not well taken in law. The surrogate of Albany obtained jurisdiction of the subject, not by the citations, but by the residence of intestate within the county of Albany at the time of his death. That fact gave to the surrogate of Albany county the sole and exclusive power to grant letters of administration on the estate of the deceased. (2 *R. S.*, 73 *and* 23.)

In other words, it was the only jurisdictional fact. The other provisions of the statute are directory, and a non-compliance with them may be ground for a motion to vacate, or an appeal to reverse, if made or taken in the proper tribunal and within the proper time, but no objection collaterally to the validity of the letters should be

allowed to be sprung upon the parties at any period, however remote, and under any circumstances, however inconvenient and unsuitable for its consideration. (*Sheldon* agt. *Wright*, 1 *Seld.*, 520.)

There is no error, therefore, in the referee's decision that the plaintiff was to be regarded in this suit as the lawful representative of Barker.

The next objection relates to the amount allowed. Barker, it appears, was ticket agent of the railroad company. Shortly before his death, which occurred the 4th of January, 1851, he deposited with the defendants, who were brokers, $675.75 in uncurrent money received by him as such agent. The defendants mingled this money with their own, so that it became undistinguishable. Nevertheless, four days after his (B.'s) death, they paid over an equivalent amount to the secretary of the company, taking an indemnity. The referee refused to allow the payment either partially or wholly. In this decision, to the extent of $150, we think he erred. After crediting all Barker's claims against the company, there was still a balance of $150 on which he had no claim.

It was the money of the company; and if it could not be restored specifically, it was not for Barker or one in his shoes, to raise the objection that the defendants or their agents returned only its equivalent. · There was a manifest equity to that extent in the claim of the company, and we see no ground for the position impliedly assumed, that the defendants were bound to set up their own wrong or that of their principal to defeat it.

As to the rest of the $675.75, the company having no just right, either legal or equitable, to it, could of course give no valid discharge on its receipt. The payment to that extent was in law a conversion of the money by the defendants.

Under all the facts, we think that interest was properly allowed. The defendant Adams, who was examined as a

witness, did not pretend that his firm had not made interest. It is the business of brokers to make money yield interest, and if the defendants, without any fault of their own, failed in this instance to do so, they could easily have shown the fact. We do not mean, however, to be understood as holding that the fact of *non-user*, had it been shown, would have released them from the liability to pay interest, especially on the two leading items of the account.

On the question, however, of the $150, a new trial must be granted, the costs to abide the event. But as the former referee is dead, the parties must apply at the special term for the appointment of another in his place.