Bumstead *v.* Read.

---

HENRY BUMSTEAD, *appellant, vs.* ARBA READ and WILLIAM BUMSTEAD, *respondents.*

Where a judicial tribunal has general jurisdiction of the subject matter of the controversy or investigation, and the special facts which give it the right to act in a particular case are averred and not controverted upon notice to all proper parties, jurisdiction is acquired, and cannot be assailed in any collateral proceeding.

Where the judicial tribunal has not general jurisdiction of the subject matter, under any circumstances, no averment can supply the defect; no amount of proof can alter the case; no consent can confer jurisdiction.

Where the judicial tribunal has not *general* jurisdiction of the subject matter, but may exercise it under a particular state of facts, those facts must be specially averred and established; and when so established on a hearing of all proper parties, cannot be impeached in any collateral proceeding.

Where, upon an application to a surrogate for probate of a will and for letters testamentary thereon, the residence of the testator, at the time of his death, in the county of such surrogate, is plainly averred in the petition, and is not in any way controverted but is substantially admitted by all the parties interested in the will, and is practically established upon sufficient evidence, as a fact, by that tribunal, that court has jurisdiction of the case; its determination is conclusive, as to the validity and probate of the will, and cannot be examined or assailed in any collateral proceeding, or in any other tribunal of original jurisdiction.

THIS was an appeal from the decree of the surrogate of Saratoga county, refusing to admit to probate in that county the last will and testament of Thomas Bumstead, deceased.

On the 11th day of April, 1855, the testator, Thomas Bumstead, died at the city of Troy, in the county of Rensselaer and state of New York, leaving no widow, but leaving the respondent William Bumstead, and Stephen Bumstead of Troy, and the appellant Henry Bumstead of Charlton, and Mary Maxon of Brooklyn, his children, and divers grandchildren, sons and daughters of his said children, who were and are his only heirs at law and next of kin, and leaving a will by which, among other things, he gave certain portions of his property to his executors therein named, of whom the respondent Arba Read was one, in trust for the said Henry and Stephen Bumstead and Mary Maxon, and certain other portions thereof to the said William Bumstead and the children and heirs at law of the said Henry and Stephen Bumstead and Mary Maxon ; which will afterwards, on the 11th day of June, 1855, upon the application of Arba Read to the surrogate of the county of Rensselaer, and the written request therefor and consent thereto of the said Henry, William and Stephen Bumstead, and after due citation and notice to them, and to the respective persons, heirs and next of kin aforesaid of the testator, and on due proof to authorize its probate by said surrogate, was duly proved before him, and letters testamentary thereon granted by him to the said Arba Read, who thereupon qualified and has since acted as the sole executor thereof. The petition so presented by the said Arba Read to the surrogate for the proof of the will was duly verified, and described the testator as of the city of Troy in the county of Rensselaer ; and in addition to the other matters necessary or proper to be stated therein, alleged and showed the making of said will by him, his subsequent death at the city of Troy in said county, and his residence at the time of his death at and in said city and county ; and the citations issued thereon by said surrogate and served on said Henry Bumstead and said other persons, also described the testator as of the city of Troy ; and neither Henry Bumstead nor either of said other persons, who appeared at the time and place of proving the will before the

Bumstead *v.* Read.

surrogate, in pursuance of said citations, in any way or manner disputed the same, or that the residence of the testator at the time of his death was at Troy, or objected to the proof of said will or the granting of letters testamentary thereon to the said Arba Read by the surrogate, but on the contrary thereof expressly requested and consented to the same. On the 23d day of July, 1857, thereafter, the said Henry Bumstead presented to the surrogate of Saratoga county, a petition for the proof of said will before said surrogate, which petition was duly verified and was similar to that previously presented by Arba Read to the surrogate of Rensselaer county for the proof of the will before him as aforesaid, except as to the place of residence of the testator at the time of his death, which it alleged was at the town of Charlton in said county of Saratoga, and prayed for a citation and subpœna, which were issued by said surrogate and served on said Arba Read and William Bumstead and the others to whom the same were directed. At the time appointed for the proof of said will before the surrogate of Saratoga county, the said Henry and William Bumstead and the said Arba Read appeared before said surrogate. Henry Bumstead produced and presented to the surrogate for probate, the said will with a certificate in due form made and signed by the surrogate of the county of Rensselaer attached thereto, and stating and showing the due and previous probate of said will by and before said surrogate of Rensselaer county, and offered to prove the death of the testator and his execution of said will, and that at the time of his death he was an inhabitant of said county of Saratoga. Arba Read and William Bumstead opposed the same, and objected to the jurisdiction of the surrogate and to his entertaining the application, for the reason that the will had already been duly admitted to probate by the surrogate of Rensselaer county, as appeared by the will itself presented. And also that it was proved before and admitted to probate by the surrogate of Rensselaer county, on the request of the proponent, Henry Bumstead, and upon due proof to authorize its probate before

the surrogate of Rensselaer county; and to sustain said objection presented and offered to read exemplified copies of the petition, consent, citations, papers and. proceedings aforesaid, upon and for the proof of said will before the surrogate of Rensselaer county. Henry Bumstead objected to the reading of said papers or either of them at that stage of the case, or to show the facts stated in the objection. The surrogate overruled the objection, and Henry Bumstead excepted to his decision. The said exemplified copies were then given in evidence by Arba Read and William Bumstead. And the surrogate thereupon made and entered an order or decree denying the proof and probate of the will and the prayer of Henry Bumstead's petition for the proof and probate thereof. From this decree the proponent appealed to this court.

*W. A. Beach,* for the appellant.

*J. Romeyn,* for the respondents.

*By the Court,* HOGEBOOM, J. The question to be determined in this case is one of *jurisdiction;* whether the surrogate of Rensselaer county had jurisdiction to take proof of the will of Thomas Bumstead deceased. No doubt, upon the petition presented to the surrogate of Saratoga, considered without reference to the other proceedings, he had jurisdiction to take proof of this will ; but this prima facie case is met by proof showing that, previously, upon a petition in all respects similar, except that it showed that the residence of the testator at the time of his death was in Rensselaer and not in Saratoga, to which and the proceedings consequent upon it the appellant and all other proper persons were made parties, the surrogate of Rensselaer assumed jurisdiction of the case, necessarily decided the jurisdictional question of residence, and admitted the will to probate as that of a man who at the time of his death resided in the county of Rensselaer. The question of residence was before him ; all proper parties were cited ;

Bumstead *v.* Read.

they had a right to take the objection that the testator did not reside in Rensselaer; they omitted to do so; and their voluntary omission is equivalent in legal effect to taking the objection and having it decided against them. The surrogate passed upon the question; no appeal was taken from his decision; and I think the question is at rest.

It is now sought to be reviewed collaterally. It is claimed to be purely a jurisdictional question and one touching the subject matter, and not merely the person, and therefore open to contestation in a collateral proceeding.

This alleged jurisdictional question is the question of residence—the residence of the testator at the time of his death; the appellant claiming it to be in the county of Saratoga, the respondents in the county of Rensselaer.

It is unquestionably an elementary principle—perhaps a universal one—that unless a court, and more especially one of special and limited jurisdiction, entertaining judicial proceedings, acquires jurisdiction of the subject matter of the controversy, its proceedings are void, and present no bar to subsequent proceedings before another and a proper tribunal.

It becomes necessary, therefore, at the outset, carefully to inquire what is meant by jurisdiction of the *subject matter*, and how it may be acquired. By jurisdiction, as applied to judicial proceedings, is meant the right to act—the lawful power to hear and determine. A court has jurisdiction of the subject matter, when it has the legal right to sit upon the case and determine it. This right, it is obvious, may be derived from various sources; from the very constitution of the court and the nature of the controversies which from time immemorial it has been in the habit of hearing and determining, or from legislative enactment. In this case the tribunal in question derives its power from the legislature.

The taking proof of wills is a marked and peculiar attribute of surrogates' courts; and in a certain sense surrogates' courts may be said to have general jurisdiction of that subject; in some cases exclusive jurisdiction; in others, concurrent juris-

diction with other courts. In these courts more than in any other—more than in all others combined—is the proof of wills made. And I think this consideration is not without some force in determining its jurisdiction in a particular case.

A particular surrogate's court, however—the surrogate of a particular county—has exclusive jurisdiction to take proof of the wills of all persons residing in that county at the time of their decease. And thus the question of residence or inhabitancy is an important, a vital element in conferring jurisdiction. I am not entirely clear, however, that on this point it may not be said to be jurisdiction rather affecting the *person* than the *subject matter*. It is true the testator is dead, and it may be said no jurisdiction of his person can be obtained; but in a certain and in a legitimate sense he may be said to be in court through his *representatives*. And if *all* his representatives of every description, his executors, heirs at law and next of kin, all *consent* to the jurisdiction of a particular tribunal—there being no other person to object—may it not be said, in a strictly proper sense, that the court has obtained jurisdiction of the *person* of the testator, or of his representatives? Suppose it were possible that the last will and testament of a party might be proved in his lifetime, at the instance of an executor or a legatee, and upon citation to the testator and others; suppose further, that the test of the surrogate's jurisdiction was the residence of the testator at the time of making the will; that at such time the testator resided or claimed to reside in the county of Saratoga, but actually executed the will in the county of Rensselaer, and had been living or staying in the latter county for some time preceding, so that a plausible question might be raised as to which was the county of his residence at the time of making the will. If, on proceedings taken by the executor to prove the will in the county of Rensselaer upon the ground that that was the county of his residence, neither the testator nor any other person, on being cited, should object to the jurisdiction on the ground that the testator actually resided in Sara-

Bumstead *v.* Read.

toga, would they not be precluded, would not the surrogate of Rensselaer acquire jurisdiction, and would not such jurisdiction be conclusive? Could it not be said, and properly said, the surrogate has jurisdiction of the *subject matter*, to wit, the taking proof of wills, and has acquired jurisdiction of the *person*, by service of citation and non-objection, or *consent* of the parties served—for consent confers jurisdiction of the person—and thus that the determination of the surrogate, unless reversed on appeal, is *conclusive*, and in nowise impeachable in a collateral proceeding. It strikes me, therefore, that the question of *inhabitancy* is properly classed under the head of those cases which treat of the jurisdiction of the *person*, rather than of those which relate to the *subject matter*.

But assume this to be strictly a question respecting *subject matter*, then how does the question present itself. There are many cases where the want of jurisdiction would be at once and clearly apparent upon the face of the proceedings. Thus if an action for slander or assault and battery were brought in a justice's court, or in a surrogate's court, the want of jurisdiction would be instantly apparent, and no consent could confer it, because the legislature has forbidden it. The *subject matter* of the controversy is wholly outside of the range of subjects upon which those tribunals can adjudicate; and I think the judgments would be absolutely void, and the persons concerned in enforcing them trespassers; and that a new action for the same cause might instantly be commenced in the proper tribunal. But this is by no means true in the case before us. The taking proof of wills is a proper subject for the action of a surrogate's court. It is true also, that to entitle a particular surrogate to take proof of a particular will, the testator must have resided in his county at the time of his decease. How is the fact of such inhabitancy to be ascertained? It must in some way be made to appear. In this case, as was proper, it was shown in a *verified* petition, and not controverted. The surrogate passed upon the question.

He had a right, nay was bound, to do so. There was legiti-mate and sufficient evidence upon which he came to the con-clusion that the testator resided in the county of Rensselaer. It is not the case of a palpable lack of proof, or of evidence plainly contradicting such a position, in which case it is pos-sible it might be held that the proceedings would be declared void in whatever form the question would be presented. (*Lewis* v. *Dutton*, 8 *How. Pr. R.* 103, *and cases there cited.*) There is no known method of establishing a fact in a court of justice except by proof or admission. And whenever a fact is litigated, the court settles it in a particular way, and then the fact is established, and all parties concerned in the litiga-tion, are concluded by it; and this is so of *jurisdictional* facts as well as of any other. (*Vanderpoel* v. *Van Valkenburgh*, 2 *Selden*, 199.) When, therefore, in this case, the surrogate's court of Rensselaer county had determined that the testator, at the time of his decease, resided in Rensselaer county, it be-came a *fact* in the case, as to that will, and as to all persons who are parties to the proceedings. The question could not be re-examined, except upon a direct review or appeal. It could not be brought in question in any collateral proceeding. It has been even questioned whether such a determination could be impeached, even if the testimony upon which it was founded was subsequently shown to be clearly mistaken or perjured. (*Dyckman* v. *Mayor of New York*, 1 *Seld.* 443.) And it seems to me such is the correct rule. In what other way can courts act? *Interest reipublicæ ut sit finis litium.* What warrant have we for saying that the second court of original jurisdiction will determine the jurisdictional question any more correctly than the first? Both are liable to be mis-taken; but there must be some point at which controversy must cease; and the general, if not universal, rule is, that it shall cease (except for purposes of review or appeal in a di-rect proceeding) whenever any competent tribunal has once passed upon a matter in issue, after hearing all parties inter-ested. Let us test the rule on the proper course of proceeding

by the case in hand. The appellant alleges, and offers proof of the fact, that the testator, at the time of his decease, resided in the county of Saratoga. If the proof is admissible, the respondent is of course entitled to controvert it. It must then be determined in the ordinary way. And when determined, if determined in favor of Saratoga, would it be quite certain that the last determination would be correct, and the former incorrect? But it is said the fact exists, one way or the other : the testator did or he did not reside in the county of Rensselaer, and the jurisdiction of the surrogate depends upon that fact. Concede it, and how is the fact to be made known to a judicial tribunal, except by evidence; and when so made known and determined by the court upon a hearing of the parties, it becomes a fact in the case, forever thereafter incontrovertible in a collateral proceeding.

Without further pursuing this train of thought, my impressions upon the question of jurisdiction are as follows :

1. Where the judicial tribunal has general jurisdiction of the subject matter of the controversy or investigation, and the special facts which give it the right to act in a particular case are averred, and not controverted, upon notice to all proper parties, jurisdiction is acquired, and cannot be assailed in any collateral proceeding. (*Vanderpoel* v. *Van Valkenburgh*, 2 *Seld.* 190. *Jackson* v. *Robinson*, 4 *Wend.* 436. *Jackson* v. *Crawfords*, 12 *id.* 533. *Davis* v. *Packard*, 6 *id.* 327. *Gorgnon* v. *Astor*, 7 *How. U. S. Rep.* 319. *Sheldon* v. *Wright*, 7 *Barb.* 39 ; *S. C.* 1 *Seld.* 497.)

2. Where the judicial tribunal has not general jurisdiction of the subject matter under any circumstances, no averment can supply the defect ; no amount of proof can alter the case ; no consent can confer jurisdiction. (*Borden* v. *Fitch*, 15 *John.* 141. *Bigelow* v. *Stearns*, 19 *id.* 39. *Dudley* v. *Mayhew*, 3 *Comst.* 9. *Coffin* v. *Tracy*, 3 *Caines*, 129. *Davis* v. *Packard*, 7 *Pet.* 276.)

3. Where the judicial tribunal has not *general* jurisdiction of the subject matter, but may exercise it under a particular

state of facts, those facts must be specially averred and estab-lished, and when so established on a hearing of all proper parties, cannot be impeached in any collateral proceeding, (*Lewis* v. *Dutton,* 8 *How. Pr. R.* 99. *Miller* v. *Brinkerhoff,* 4 *Denio,* 119. *Matter of Faulkner,* 4 *Hill,* 598. *Staples* v. *Fairchild,* 3 *Comst.* 41. *Harman* v. *Brotherson,* 1 *Den.* 537, *Field* v. *McVickar,* 9 *John.* 130. *Erwin* v. *Lowry,* 7 *How. U. S. Rep.* 172. *McCormick* v. *Sullivan,* 10 *Wheat.* 192, *Dyckman* v. *Mayor &c. of New York,* 1 *Selden,* 434.)

The result is, that as the residence of the testator in the county of Rensselaer was plainly averred in the petition for probate in the surrogate's court of that county, and was not in any way controverted, but substantially admitted by all parties interested in the will, and was practically established, upon sufficient evidence, as a fact, by that tribunal, that court had jurisdiction of the case ; its determination was conclusive as to the validity and probate of the will, and could not be re-examined or assailed in any collateral proceeding, or in any other tribunal of original jurisdiction.

The decree or order appealed from was therefore proper, and must be affirmed with costs.

[ALBANY GENERAL TERM, December 5, 1859, *Wright, Gould* and *Hoge-boom,* Justices.]