NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—August, 1886.

MATTER OF BREWSTER.

*In the matter of the estate of* CHRISTOPHER S. BREWS-
TER, *deceased.*

The circumstances under which the public administrator of the county of
New York may obtain letters of administration of a decedent's estate
are prescribed by L. 1882, ch 410, § 227, and not by the Code of Civil
Procedure.

That officer is not required to give notice of his intention to apply for such
letters to a relative of the decedent who, though having a prior right
to letters, is not actually entitled to a share in the estate.

Failure to give proper notice of such intention is not a jurisdictional defect,
but a mere irregularity, of which none can take advantage except such
as are entitled to the notice.

The public administrator is not required to file a petition for letters; and
if he does, its allegations, though upon information and belief, are
not deprived of the probative force prescribed by the statute.

As to whether one named as executor, and legatee, in an alleged will of a
decedent not admitted to probate, has a sufficient interest in the estate
to enable him to petition, under Code Civ. Pro., § 2685, for the revo-
cation of letters of administration issued to the public administrator—
*quære.*

MOTION by William C. Brewster, to revoke and can-
cel letters of administration of decedent's estate,
granted to the public administrator.

B. F. EINSTEIN, *for the motion.*

ALGERNON S. SULLIVAN, *opposed.*

THE SURROGATE.—The public administrator in the
city of New York was, on the 25th of April, 1885,
appointed administrator of the estate of this decedent.
The appointment was made upon his verified petition,

which alleged upon information and belief that the decedent died intestate at Paris, France, in December, 1870, and that at the time of his death he was possessed of certain personal property in the county of New York. A nephew of decedent, whose father died while the decedent was yet living, has instituted proceedings for the revocation of the respondent's letters of administration. He insists that the Surrogate should not and would not have granted such letters but for the wilful suppression, by a person at whose instigation the public administrator is claimed to have acted, of the fact that, at the time the letters were applied for, there was in the county of New York a person entitled to notice of the application; for he claims that he himself, as a nephew of the decedent, and his nearest relative residing in such county, was a person so entitled.

The petitioner in instituting the present proceeding seems to have acted upon the notion that the respondent's right to letters of administration rests upon certain provisions of the Code, and that the Code prescribes the procedure which the respondent was bound to adopt in applying for letters. Such is not the case. The application was evidently made under §§ 16 and 17 of tit. 6; ch. 6, part 2, R. S. (3 Banks, 7th ed., 2312), as re-enacted in § 227 of the New York city Consolidation act of 1882 (L. 1882, ch. 410). As this statute was passed after the adoption of chapter 18 of the Code of Civil Procedure, it is clear that the provisions of §§ 16 and 17, *supra*, however they may have been affected by the enactment of that portion of the 18th chapter which regulates " the grant of let-

ters of administration " (title 3, art. 4) have been in full force and effect since they were recognized and adopted as law by the Consolidation act. We must therefore look to § 227 of that statute, and not to the Code of Civil Procedure, for ascertaining the circumstances under which the public administrator may obtain letters of administration upon a decedent's estate. By virtue of § 27, title 2, ch. 6, part 2, R. S. (3 Banks, 7th ed., 2290), this petitioner was no doubt entitled, in preference to the public administrator, upon this decedent's estate, and if the application of the public administrator had been made under the Code of Civil Procedure, the petitioner would have been entitled to notice unless he had previously renounced his right to letters. It is expressly declared by the section referred to that the preference of the public administrator shall be subordinate to that of the next of kin of the deceased " who would be entitled to share in the distribution of the estate," and it has been held that this phrase " would be entitled " means *would be entitled in any event*. That is, in case there should be at the period of distribution no relatives having a superior claim (Lathrop v. Smith, 24 *N. Y.*, 417; Butler v. Perott, 1 *Dem.*, 9).

It does not follow, however, that by reason of his right to letters in priority over the public administrator, the petitioner was entitled to notice of the application upon which the letters were heretofore issued to that officer. Whether he was or was not so entitled must be ascertained by reference to § 227 of the Consolidation act. That section provides that the notice which the public administrator shall be required

to give of his intention to apply for letters " shall be served personally on the widow and the relatives of the intestate entitled to any share in his estate, if there be any to be found in the city, at least thirty days before the time therein specified. If there be none to be found in the said city," the section proceeds to say, " and in all cases where the notice shall not have been personally served, it shall be published at least twice in each week for four weeks in some newspaper printed in the city." It will be observed that the relatives upon whom the notice is required to be personally served, if they can be found in the city, are " *the relatives of the intestate entitled to any share in his estate.*" Is the present applicant such a relative ? He claims to be, and relies on the interpretation which the courts have put upon the language of the statute already referred to as establishing the order of priority in which letters of administration are granted in cases of intestacy. But the expression which is used in that statute is not " relatives entitled," but " relatives who *would be* entitled." " Administration in case of intestacy," says § 27 (*supra*) " shall be granted to the relatives of the deceased who would be entitled to succeed to his personal estate, if they or any of them will accept the same, in the following order "—then follows a specification of the order of priority of the widow and the kin of the intestate, concluding as follows : " Eighth. To any other next of kin who would be entitled to share in the distribution of the estate."

As has been intimated already, it was held in Lathrop v. Smith (*supra*), and subsequently in Butler v.

Perrott (*supra*), that the language, above quoted, when read in the light of the context, could not fairly be construed as confining the right of administration to such relatives of the intestate as were actually entitled to share in his estate ; and that as against the claim of a stranger to the blood of the intestate, any one of the intestate's relatives, who might under any circumstances be entitled to participate in his personal estate would be entitled to letters. It seems to me that the language of § 227 can not fairly receive this literal interpretation, but that, on the contrary, it plainly and unmistakably contemplates the notification of only such relatives of the intestate as are actually entitled to a distributive share of his personal estate.

I hold, therefore, that the petitioner, although one of decedent's kindred whose claim to administration was superior to that of the public administrator, was not entitled to notice of the public administrator's application for letters. The statute under which that officer proceeded relieved him from the necessity of notifying the petitioner, as similarly by § 2662 of the Code of Civil Procedure, a resident of the State having a right to administration inferior to non-residents who are nearer of kin to a decedent is not required to cite such non-residents unless the Surrogate in his discretion shall so direct.

The conclusion that I have reached upon this question of notice must lead to the dismissal of the application before me, unless there was, as the petitioner claims, some jurisdictional defect in the proceeding for obtaining letters, because of which the Surrogate's

action is absolutely void. I think there is no doubt that if any such defect exists the petitioner can avail himself of it. His preferential right to letters of administration entitles him to relief. The fact, if it be a fact, that the decree is a nullity would not preclude him from obtaining relief in the manner indicated (Seaman v. Whitehead, 78 *N. Y.*, 306).

It is claimed that, at the time the public administrator applied for letters, he did not in the manner prescribed by law give notice of such application to the children of the decedent who were residing in Europe, and that this omission is fatal to the validity of the proceedings, and to the jurisdiction of the court to entertain them. Assuming that there was such an omission—and as to whether there was or was not I express no opinion—it did not in my judgment produce the effect claimed for it. The court obtained jurisdiction by the presentation of the application and by the existence of the jurisdictional facts, the character of which will be presently considered, and failure to give notice of such application to any party whose right to letters was superior to the applicant's and who was entitled to notice, was a mere irregularity which did not vitiate the proceeding and of which advantage could be taken only by the party failing to receive notice (James v. Adams, 22 *How. Pr.*, 409; People v. Waldron, 52 *How. Pr.*, 221; Johnston v. Smith, 25 *Hun*, 171; Kelly v. West, 80 *N. Y.*, 139, 145).

The validity of the decree is further attacked upon the ground of the insufficiency of the petition to confer jurisdiction upon the Surrogate. The facts upon

which the jurisdiction depended were the death of the decedent, his intestacy, and the presence in this county, at the time of his death or afterwards, of effects belonging to his estate (Subd. 1, § 219, ch. 410, Laws of 1882; Bloom v. Burdick, 1 *Hill*, 130; Bumstead v. Read, 31 *Barb.*, 661; James v. Adams, *supra*; Sheldon v. Wright, 5 *N. Y.*, 497; Farley v. McConnell, 52 *N. Y.*, 630; Roderigas v. East River Sav. Inst., 76 *N. Y.*, 316; Leonard v. Columbia Steam Nav. Co., 84 *N. Y.*, 48; Johnston v. Smith, *supra*).

Whether, at the time of his death, the decedent was or was not a citizen of this State is entirely irrelevant to the inquiry respecting the Surrogate's jurisdiction. It is clear that the limitations of § 220 of the Consolidation act have no application to subdivision 1 of § 219, the subdivision with which we are solely concerned in the case at bar. Section 220, in restricting the operation of subdivisions 3, 4 and 5, is obviously intended to prevent the public administrator from taking charge, in the cases therein specified, of the effects of decedents not citizens of the State, unless such decedents, or the goods of such decedents, have been "landed within the city of New York, or at the Quarantine near said city"' (Suarez v. The Mayor, 2 *Sandf.*, 175, 180).

The law under which the administrator acted contains no provision requiring him to file a petition with the Surrogate, or prescribing the manner in which he shall bring to the attention of the Surrogate or that officer the facts necessary to set in motion his authority. A petition would naturally suggest itself as the

most convenient and suitable method, and such method was adopted by the public administrator in the case at bar. The circumstance that the averments of that petition are upon information and belief does not make the paper ineffectual as the foundation of the proceeding whose validity is here assailed, or deprive such paper of probative force and effect. The petition was sufficient to justify the Surrogate in regarding the jurisdictional facts which it alleged as established, and in granting the letters which were thereupon issued.

The contestant strenuously insists that there was a failure to prove the decedent's intestacy, but the statute under which the public administrator was acting expressly provides that in a case of this character "intestacy shall be presumed until a will shall be proved and letters testamentary granted thereon." Even if the proofs furnished by the petition were insufficient, therefore, to make out a case of intestacy, this provision would have relieved the applicant from the necessity of submitting any such proof. That all the necessary jurisdictional facts were established before letters were issued is a proposition which finds support in the decision of the Court of Appeals in Sheldon v. Wright (*supra*). The petition there in controversy was substantially the same as the one here assailed, and was regarded as sufficient to confer jurisdiction. Roderigas v. East Riv. Sav. Inst. (*supra*) is not in conflict, but in harmony with Sheldon v. Wright. In delivering the opinion of the court in the later case, Chief Judge CHURCH said: "It is quite unnecessary in this case, and it is not intended,

to hold that the fact that the Surrogate did not act, and the defective proof, would avail if the plaintiff had been dead, because then the Surrogate would have had jurisdiction over the subject matter, and subsequent irregularities and defects would not vitiate the proceedings so as to render them void."

The meaning of the language I have just quoted is made somewhat clearer by substituting " defect of " in place of " defective." This corrects what is probably a misprint; but however that may be, there can be no doubt that the court deliberately indicates its refusal to declare that even such a state of facts as was disclosed in the case there under consideration would have availed the appellants, if the alleged decedent had not been in fact alive.

The proceedings which resulted in the grant of letters are further attacked because of the alleged false and fraudulent character of the averments of the petition, and because of the alleged false suggestion of material facts contained therein. It is doubtful whether the petitioner is in a position to make this attack. I have declared that he was not entitled to notice of the commencement or pendency of the proceedings, and it is questionable whether the fact, that he is the executor and a legatee under the will of Seabury Brewster who was in his lifetime named as the executor and a legatee under an alleged will of this decedent, never as yet admitted to probate, entitles him to be regarded as a party so interested in this estate, within the meaning of § 2685 of the Code of Civil Procedure, as to enable him to avail himself of the provisions of that section. In view, however, of

the disposition that I am about to make of this claim of false averments and suggestions, it will be unnecessary to determine this question of *status*.

I think that the only allegations respecting which the charge of fraud and falsehood can be material are those regarding the intestacy of the decedent and the presence of assets in this county belonging to him at the time of his death. The statute under which the public administrator brought his proceeding provides, as we have seen, that intestacy shall be presumed until a will of the decedent shall have been proved and letters granted upon it. Now, as no will of this decedent has ever yet been proved, the allegations of the petition respecting intestacy were in legal effect correct and true.

I do not understand it to be claimed that the decedent left no assets in this city at the time of his death, but it is insisted that a valid and effectual distribution of all his property had been made previous to the application for letters of administration under and in pursuance of a testamentary instrument executed by the decedent while residing in France. Whether this claim is or is not well founded can be determined by the Supreme court, in which is now pending an action brought by the public administrator to recover alleged assets of the estate. Until that determination shall have been reached, I shall not enter upon any investigation as to the truth or falsity of the allegations of this petition touching the existence of assets of this estate in New York county (Pumpelly v. Tinkham, 23 *Barb.*, 321, 323).

Petition denied.