## Estate of Grimani

*Joseph N. Bongiovanni, Jr.,* for accountant.
*Bernard Glassman* and *Abraham Mora,* for Angiolina Coco Romita.
*Albert B. Gins,* for Anna Maria Crosara.
*Edmund P. Butler,* amicus curiae.

SHOYER, *J.,* March 10, 1981—Before us are two sets of exceptions filed to the adjudication of Judge Jamison in the Estate of Nino Grimani, Deceased. Joseph Bongiovanni, Jr., Administrator c.t.a. has filed one set of exceptions, and counsel for Angiolina Coco Romita has filed the other exceptions. Anna Maria Crosara, an alleged daughter of testator residing in Italy, is represented by Albert B. Gins, Esq., of New Jersey, who appeared at the argument of the exceptions joining with the other counsel in their briefs, but he has filed no exceptions on behalf of his client to Judge Jamison's adjudication. The testator, Nino Grimani was domiciled in Rome, Italy, and residing there at the time of his death testate on September 9, 1975. He had never resided in Pennsylvania and had no property here at the time of his death. For want of subject matter jurisdiction Judge Jamison, the learned auditing judge, refused to audit the account, and made no awards. We approve of her ruling and so state in our decree.

Since there was no party to present argument against the exceptions, Administrative Judge Pawelec, appointed Edmund P. Butler, Esq., as amicus curiae. He has filed a brief and argued in support of the adjudication.

Testator's holographic will written in Italian, in Rome, reads as follows:

"Rome, 10 November 1974
Will:
I, the undersigned Nino Grimani, a citizen of the United States of America, being of sound mind and spirit, declare and elect as my universal heir of everything I own, my dear and adored wife, Matilde Coco, widow Wurm, now Grimani, provided that she will provide for the payment to my brother-in-law Bruno Mion and to his wife, Teresa Mion of a sum equivalent to $30,000 (thirty thousand) U.S. Dollars.
This present will revoke all prior Wills.
In Witness Whereof
s/Nino Grimani
Angiolina Coco,
widow Romita Rosa Lia DiSalvo Witness
Witness

Else Beria
s/Teodoro Nastasi, Notary"

Testator's widow, Matilde Coco Grimani, survived him. She was resident in Miami, Florida, and died on January 18, 1976. Teresa Mion, who died on August 2, 1975, predeceased Nino Grimani. Bruno Mion, testator's brother-in-law, has survived and has renounced his right to the pecuniary bequest of

$30,000. It appears that no administration has been raised in the estate of testator's widow in Florida or in Rome. According to the certificates of death, Mrs. Grimani was an Italian citizen. Angiolina Coco Romita is a sister of Mrs. Grimani. She claims to be the sole heir of Mrs. Grimani's estate and hence to have succeeded to her rights under Nino Grimani's will.

Anna Maria Crosara claims to be the only child of Nino Grimani, and that he was an Italian citizen at the time of his death. Although testator may have become a United States citizen it is claimed that under Italian law his Italian citizenship was automatically reinstated after two years residence in Italy. All parties agree that Italian law should apply and Anna Maria Crosara claims that as testator's only daughter she is entitled to one-half of his estate under the Italian Civil Code.

On February 17, 1977 Joseph N. Bongiovanni, Jr., Esq., submitted "an authentic copy of Italian probate" of the above will to the Register of Wills of Philadelphia County for probate and on the same day there were granted to him Letters of Administration c.t.a. Joseph N. Bongiovanni, Jr., is a member of our Philadelphia Bar. His petition for probate notes that decedent was not domiciled in Philadelphia but did have personal property here. So far as appears, testator and his wife never set foot in Pennsylvania. The same is true of the claimants.

The inventory filed by the Administrator c.t.a. lists the following assets:

Real Estate in Pennsylvania: None
Personal Property:
1. Cash in Dollar Account, Swiss
   Bank Corp., Zurich, Switzerland  $58,655.52

Securities in Dollar Account, Swiss Bank Corp.;

2. $33,000 (face) Siemans Western Finance NV 9% 1985     33,909.66
3. $78,000 (face) Grand Metropolitan, Ltd. 9¼% 1/1/86     62,415.57
4. ECU 10,000 7¾% Eurofina Ste. Europ. pur le fin. de Materiel Ferroviaire Basle 1971-81, with currency option     12,081.24
5. Cash in Deutschmark Account     31,386.98
6. Cash received from Angelina Coco Romita     1,200.00

                     $198,829.87

As noted decedent's estate consisted of currency and bonds allegedly located in Swiss Banks.

Quoting from Judge Jamison's Adjudication:

"The Accountant submitted a xerox copy of a letter from Delia Veneis of New York dated February 7, 1977, one week before the issuance of letters, which reads:

'Dear Mr. Bongiovanni

As per our conversation, I am sending you the check of $1200.00 for Signora Lilly Romita of Rome.

Good wishes,

Sincerely
/s/ Veneis Delia'

This sum corresponds to Item 6 of the inventory: 'cash received from Angelina Coco Romita.' There is no indication whether the $1,200 (less than 1% of the estate) was a cash asset of Mr. Grimani or a sum of money sent to counsel to facilitate the administration of the estate in Philadelphia.

The testator owned no property in Philadelphia at the time of his death. Letters of Administration were not applied for by the Administrator, c.t.a. until he received $1,200 from Rome via New York from Angelina Coco Romita (which appears to be a retainer) more than one and a half years after the death of Nino Grimani."

The subject matter jurisdiction of the Orphans' Court Division is prescribed by the Probate, Estates and Fiduciaries Code, Chapter 7, subchapter B, 20 Pa.C.S.A. §711 which provides in part:

"Mandatory exercise of jurisdiction through Orphans' Court Division in general . . . [T]he jurisdiction of the court of common pleas over the following shall be exercised through the orphans' court division: (1) Decedents' estates. The administration and distribution of the real and personal property of decedents' estates and the control of the decedent's burial."

As noted above, decedent's assets at the time of his death were all in Switzerland. Swiss banks were informed that decedent was an American citizen and, therefore, we are told, would not release the assets except to an administrator or executor of decedent's estate. The possibility of getting letters in New York was explored by Mr. Bongiovanni, but an investigation revealed that decedent was never domiciled in New York although at times both decedent and his wife had lived in New York and also in Florida. The possibility of a domicile in Florida had been investigated by others before Mr. Bongiovanni was asked to act and again we are told there was no basis for letters in Florida. Therefore, it was appropriate, Mr. Bongiovanni

claims, that an estate be raised in some American jurisdiction so that this estate can be administered.

Mr. Bongiovanni also tells us that under Italian law a will is published after death before a notary (Section 620 of the Civil Code) providing in part: "Whoever is in possession of a holographic will must present it to a notary for publication as soon as he receives notice of the death of the testator." Mr. Bongiovanni assures us that this was done in this case.

Unfortunately, we are also told that under Italian law there is no fiduciary. The estate (successione) comes into being at the moment of death (456 Civil Code). The inheritance is acquired by acceptance of the alleged heirs (459 Civil Code). The heir pays the creditors of decedent (495 Civil Code). The right of the alleged heirs and others having claims is determined by litigation in a regular court. (Part 33, Part 34 Civil Code). Our unfamiliarity with Italian law does not permit us to question Mr. Bongiovanni's assertions of how an estate like decedent's is handled in Italy.

Counsel for the two exceptants rely on sections 3131 and 3151 of the PEF Code, 20 Pa.C.S.A. §3131 and §3151.

Section 3131 reads in pertinent part as follows:

"Place of probate . . . If the decedent had no domicile in the Commonwealth, his will may be probated before the Register of any county where any of his property is located."

Section 3151 in pertinent part provides: "Proper county . . . If the decedent had no such domicile in the Commonwealth, letters testamentary or of administration may be granted by the register of any

county wherein property of the estate shall be located. . . ."*

Counsel for the exceptants argue that there is no requirement that decedent's property must be located in the county at the time of decedent's death. As stated in Judge Jamison's adjudication:

"It was the intention of the legislature, and it is implicit in the statute, that a will may be probated in any county where, *at the time of* his death, any property of the decedent is located. Clearly, Section 301 of the Register of Wills Act and Section 3131 of the PEF Code [which superseded Section 301] were not intended to allow the heirs of a decedent, who never resided in and had no property in Pennsylvania, or the heirs of a decedent's spouse who have had no contacts in Pennsylvania, to send cash to an attorney practicing in this Commonwealth as a means of manufacturing jurisdiction."

Counsel also rely on the Restatement, 2d, Conflict of Law, §314(b), which provides:

---

*By Act No. 352, Session of 1955, P.L. 1084, effective February 23, 1956, the following sentence was added to section 301 of the Fiduciaries Act of 1949, predecessor of section 3151: "If the decedent had no such domicile in the Commonwealth, and had no property located therein, and service of process is to be made in the Commonwealth upon his personal representative as authorized by law, then letters testamentary or of administration on his estate may be granted by the register of any county of the Commonwealth and, when granted, shall be exclusive throughout the Commonwealth." The purpose of this amendment was to provide a forum for claimants against the estates of deceased motor vehicle or aircraft operators involved in accidents. This is clearly shown by reference to Act No. 345, Session of 1955, P.L. 1081, section 2(b) and Act No. 351, Session of 1955, P.L. 1081, section 1(b), both of which acts were approved on the same date as Act No. 352, namely February 23, 1956.

"§314. Where Will May Be Probated and Representative Appointed

"The will of a decedent will customarily be admitted to probate and an executor or administrator appointed in a state . . . (b) where there are assets of the estate at the time of decedent's death or at the time of the appointment of the executor or administrator. . . ."

Among the comments to section 314 appear the following:

"b. Jurisdiction of state. Any state has jurisdiction to admit a will to probate or appoint an executor or administrator for a decedent. *As a practical matter, however, this will not be done unless there is reason to believe that there is some function for a local officer to perform in the state in the settling of the decedent's estate.* If an executor or an administrator is appointed in a state in the absence of such circumstance and there subsequently develops some occasion for him to act, such as where chattels are brought into the state after the appointment, any action taken by him under the rules stated in this Chapter is valid . . ." (Emphasis supplied.)

Our research of Pennsylvania law fails to uncover any case which deals, like this one, with the grant of original letters. However, Lang's Estate, 301 Pa. 429, 152 Atl. 570 (1930), dealing with ancillary letters clearly holds that property of a decedent must be located in the county before letters may be validly issued by the register of wills. It was held in that case that ancillary letters of administration on the estate of a decedent resident at the time of his death in another state, are not grantable by the register of wills of one of the counties of Pennsylvania upon the application of a creditor of the estate

resident in such county, who falsely alleged the existence of property therein. The indebtedness due decedent was evidenced by promissory notes of the debtor held by decedent in the state of his residence at the time of his death. The court stated at p. 434:

"The situs of a promissory note is with the owner thereof, wherever he happens to be, and as the notes here involved were in California, there was no part of the goods and estate of the decedent in Jefferson County when the ancillary letters were granted and, therefore, they were improperly issued."

Although in Lang's Estate, counsel had agreed to the issuance of the letters our Supreme Court held this was of no moment because subject matter jurisdiction cannot be conferred by agreement of counsel: Wolfe v. Lewisburg Trust & S.D. Co., 305 Pa. 583, 588, 158 Atl. 567 (1931). Accordingly it was held that the action of the register of wills in revoking the grant of letters was proper.

Judge Jamison acted sua sponte because in her opinion the court lacks subject matter jurisdiction and the action of the register in admitting the will to probate was beyond his authority and of no effect.

The courts of the State of New York have had occasion to deal with this problem on numerous occasions. In Estate of De Camillis, 66 Misc. Rep. 2d 882, 322 N.Y.S. 2d 551, aff'd 327 N.Y.S. 2d 554 (1971), the surrogate found a similar lack of subject matter jurisdiction and held that the letters of administration previously issued must be revoked. The court said, 66 Misc. Rep. 2d at 888, 322 N.Y.S. 2d at 556:

"By, 'jurisdiction' we mean the power and au-

thority of a court to hear and determine a judicial proceeding. (Bumstead v. Read, 31 Barb. 661, 665; Bergan, J., in Mattice v. Kingston Trust Co., 178 Misc. 256, 258, [33 N.Y.S. 2d 799, 802]; United States ex rel. Rudick v. Laird, 2 Cir., 412 F. 2d 16, 20.) Frequently the determination of the extent of the judicial jurisdiction of a State may depend not so much upon what the State claims for itself as upon what other States will accord to it. Thus the power of a particular State to exercise authority through its courts over persons or property must be decided under established principles of conflict of laws. However, the fact that a State does have a well recognized jurisdiction to act through its courts in a particular situation does not necessarily mean that in fact it has given authority to a particular court to decide the matter or even that it has chosen to exercise its jurisdiction in such circumstances. (Restatement, Conflict of Laws 2d, Ch. 3, Introductory Note, par. [c].) The power which the State of New York possesses over decedents' estates and which the State has chosen to exercise has been conferred by the State upon the Surrogates' Courts of the respective counties. With respect to the estates of nondomiciliaries, the Surrogate's Court of New York County has been given jurisdiction to act when and if the nondomiciliary (a) 'left property within that county . . . (b) left personal property which since his death, . . . has come into that county . . . and remains unadministered.' (SCPA §206, 207.) The power and authority thus delegated to this court would seem to accord with the power and authority generally recognized as residing in a State other than the State of domicile, with whatever necessary limitation the expression of the grant in abbreviated specific text could possibly create. (See 3 Beale, Conflict of Laws, §467.2; Restatement, Conflict of Laws 2d, §314, 315.)"

In that case in her petition for letters of administration the administratix alleged that she was decedent's widow and sole distributee, that he had died domiciled in that county (New York County) and that he left personal property therein, whereas, in fact, her marriage to him had been annulled, he had been domiciled in Italy, he had no property with situs in New York County at the time of his death and his relatives had commenced administration proceedings in Italy. The surrogate revoked the letters of administration and held, at 893, 322 N.Y.S. at 561:

"The conduct of the respondent in this case constituted a fraud upon the court, was in fraud of the rights of the relatives in Italy where an administration was being conducted in accordance with the law of the domicile, and was fraudulent as to [Banca Commerciale Italiana], rendering it liable to persons in Italy and possibly to the Italian Government. Under such circumstances this court cannot exercise jurisdiction over this estate, at least under present circumstances. Its plain duty is to direct return of the property held by Chemical [Bank New York Trust Company] to the domicile of the decedent."

Hoes v. New York, New Haven & Hartford R.R. Company, 173 N.Y. 435, 66 N.E. 119 (1903), is a leading New York case. There the Surrogate granted letters of administration to a public administrator of the County of New York on the estate of a non-resident who had died leaving no property within the State of New York but his assets were alleged to have come there since his death. It was held that the appointment might be collaterally attacked in an action by his administrator against a foreign corporation to recover for an accident occurring in another state causing the death of the

intestate where the decree appointing the administrator was obtained by collusion, in that property of trifling value (chain and watch worth $25) was brought into the state in order to lay the foundation for the application for letters so that an action might be prosecuted in the State of New York.

The New York Court of Appeals said at 441, 442, 66 N.E. 120, 121:

"We have thus presented, on undisputed facts, a most important question of law. Is it possible, by a device so simple and transparent as the one here disclosed, to confer upon the Supreme Court of this state jurisdiction to try a negligence action having its origin in the state of Connecticut, and between a corporation and residents of that state? If this can be done, it will open wide the floodgates of litigation in similar cases, establish a new legal industry, and impose thereby upon our already overworked courts the obligation to try actions imported from a foreign jurisdiction . . .

"The Act of 1898 refers to assets which 'shall arrive within the County of New York after his death,' and the section of the Code referred to speaks of property 'which has since his death come into the State and remains unadministered.' These provisions should be construed as meaning that the assets must 'arrive' or 'come' into the state, in good faith, in due course of business, and not for the avowed object of securing a resident plaintiff who can prosecute a negligence action against a foreign corporation on a cause of action arising in, and between residents of, another state."

The New York Court of Appeals took occasion to explain its earlier decision In the Matter of Hughes, 95 N.Y. 55, which was relied on by plaintiff to sustain jurisdiction. There Peter Hughes, a priest had died domiciled and resident in Pennsylvania.

Shortly after his death the bulk of his assets was brought to New York where all his kin resided and an administrator was appointed in New York. Subsequently, an ancillary administrator was appointed in Pennsylvania. Although the removal of the assets from Pennsylvania by the New York kin to New York was illegal, but without "wrongful intent,"—it had been shown that all the debts in Pennsylvania had been paid,—so the court thought it reasonable to permit the appointment of the administrator in New York to remain and distribution of the assets to be made to the kin in New York where they all resided. The subjection of the funds to double commissions was thus avoided. We do not regard the Hughes decision of any help to the present claimants who all reside in Italy and have given us no proof as to payment of Italian creditors.

Pietraroia v. New Jersey and Hudson River R & F Co., 197 N.Y. 434, 91 N.E. 120, and other New York cases cited in the DeCamillis opinion are to the same effect.

At first reading, section 711 of PEF Code seems clear. Any matter involving a decedent's estate is sufficient for the orphans' court to establish jurisdiction. But such an interpretation, if it does not imply some contact with the State of Pennsylvania would give us a law that exceeded the power and authority of the legislature.

"Under civilized systems of law a state must have certain minimum contacts with the parties or their property in order to possess legal power to exercise authority through its courts. A judgment rendered in the absence of such contacts will not be recognized or enforced in other states." Introductory note, Restatement, 2d, Conflicts of Laws, §24.

The State legislature has itself recognized its limitations in enacting section 714 of the PEF Code:

"§714. Conflicts of laws      Nothing in this chapter shall be construed to interfere with the rules of law applicable to the determination of the question whether Pennsylvania courts have jurisdiction of the subject matter enumerated in this chapter."

The commission's comment to the predecessor of this section (Orphans' Court Act, section 303) was as follows:

"There is no statutory precedent for this section which is intended to make it clear that this Act does not attempt to assume jurisdiction in cases where, under the applicable rules of conflict of laws, jurisdiction would be in the courts of another state."

Since we must, therefore, imply in the statute some contact with Pennsylvania, it is clear that the Orphans' Court would lack subject matter jurisdiction over the Grimani Estate if no payment had been made to counsel in Pennsylvania before probate. The question now becomes: Does the deposit of funds in a Pennsylvania bank in an unabashed attempt to create jurisdiction constitute a sufficient contact with Pennsylvania to give jurisdiction? In the opinion of this court the answer is "no." Support for this position is found in the Restatement, in consideration of state interest and in the concern of courts to maintain their dignity and authority.

Section 56 of Restatement, 2d, Conflict of Laws, provides in part: "(1)  A state has power to exercise judicial jurisdiction to affect interests in a thing if the relationship of the thing to the state is such as to make the exercise of such jurisdiction reasonable."

Is it reasonable to conclude that the presence of a $1,200 asset in the jurisdiction, which arrived after the death of decedent and which was used to create jurisdiction for a much larger estate is such a rela-

tionship that it makes jurisdiction reasonable? Clearly it is not. There are no Pennsylvania *creditors, parties, debtors or stakeholders; only attorneys* for the parties live in Pennsylvania. That would certainly be a novel "contact" for establishing and keeping jurisdiction.

State interest and policy are the next consideration. Does the state wish its courts to be the largely unpaid arbiters of cases from distant jurisdictions, issuing decrees which would be unenforceable, while the state receives not a penny of tax revenue? Does the state wish to encourage international jurisdiction-shopping by permitting ingenious devices to create jurisdiction far from the true parties? With a little imagination, cases could be litigated and disposed of in a forum selected for its compliant judiciary, tax revenue and procedural rules, completely without any consideration of interested parties such as creditors, heirs and the like. This is a practice which should be promptly eliminated by denying jurisdiction in this case, not because of suspicion of base motives of counsel but because of the mischief such a precedent would cause. Counsel has candidly admitted in his brief that New York and Florida, two jurisdictions with greater contacts to the present case than Pennsylvania, were unsuccessfully approached to take jurisdiction.

The accountant urges us to audit his account and to order distribution to the widow's sister subject to a final distribution as ordered by an Italian court. This we cannot do. Even where the Pennsylvania court has jurisdiction as in Bertin's Estate, 245 Pa. 256, 91 Atl. 669 (1914), the Supreme Court said it was better to have the will of a French domiciliary construed by the courts of her domicile in France and referred the legatee claimant to that court for consideration of her claim.

We have presented to us a case of collusion and legal fraud in the proceedings before the register of wills. We do not regard the accountant as guilty of actual fraud, for what he did he did openly, and with a claim of legal right, but by an error of judgment he was led to adopt a course of procedure that amounted to a legal fraud upon this court, the daughter claimant and possible creditors in Italy, and possibly the Italian Government. Under such circumstances this court cannot exercise jurisdiction over this estate, at least under present circumstances. Our plain duty is to direct return of the assets to the domicile of the decedent in Italy. We will also order the letters of administration c.t.a. to be vacated.

An appropriate decree will be entered.

## FINAL DECREE

And now, March 10, 1981, we enter the following decree:

1. The order of Judge Jamison of March 27, 1980, holding that this court is without jurisdiction, and refusing to audit the account and make awards is approved.

2. Edmund P. Butler, Esq., is directed to file a petition for his compensation as amicus curiae.

3. The accountant is ordered and directed to return the assets of the Estate of Nino Grimani to Italy for proper construction of testator's will and distribution of his estate.

4. The register of wills of Philadephia County is directed to vacate the letters of administration c.t.a. previously granted to Joseph N. Bongiovanni, Jr., Esq.

5. All exceptions to the opinion and order of Judge Jamison dated March 27, 1980, are dismissed.